ACCEPTED
02-17-00366-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
12/20/2017 9:57 AM
DEBRA SPISAK
CLERK

No. 02-17-00366-CV

_____

IN THE

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
12/20/2017 9:57:14 AM
DEBRA SPISAK
Clerk

SECOND DISTRICT COURT OF APPEALS

AT FORT WORTH, TEXAS

JONATHAN AFLATOUNI,

Appellant,

vs.

ENCLAVE AT GRAPEVINE, L.P.,

Appellee.

_____

Appealed from the 342nd Judicial District Court of Tarrant County, Texas

_____

**BRIEF OF APPELLANT JONATHAN AFLATOUNI**

_____

PALMER & MANUEL, L.L.P.

By: /s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg
State Bar No. 00790051
jsandberg@pamlaw.com
8350 N. Central Expressway; Suite 1111
Dallas, Texas 75206
(214) 242-6444/Fax (214) 265-1950
**COUNSEL FOR APPELLANT
JONATHAN AFLATOUNI**

**ORAL ARGUMENT REQUESTED**

No. 02-17-00366-CV

_____

SECOND DISTRICT COURT OF APPEALS

AT FORT WORTH, TEXAS

JONATHAN AFLATOUNI,

Appellant,

vs.

ENCLAVE AT GRAPEVINE, L.P.,

Appellee.

_____

**Identity of Parties and Counsel**

_____

In order that the members of this Court may determine disqualification and recusal under Texas Rule of Appellate Procedure 38.1(a), Appellant Jonathan Aflatouni certifies that the following is a complete list of the parties, attorneys, and other persons with a financial interest in the outcome of this lawsuit:

APPELLANT JONATHAN AFLATOUNI (Plaintiff)
Represented By:

Jeffrey R. Sandberg
State Bar No. 00790051
jsandberg@pamlaw.com
PALMER & MANUEL, L.L.P.
8350 N. Central Expressway; Suite 1111
Dallas, Texas 75206
(214) 242-6444
Facsimile: (214) 265-1950
(Trial and Appellate Counsel)

APPELLEE ENCLAVE AT GRAPEVINE, L.P (Defendant)
Represented By:

Margaret "Peg" Donahue Hall
Texas Bar No. 05968450
peg.hall@dentons.com
Leanna M. Anderson
Texas Bar No. 24085833
leanna.anderson@dentons.com
Spencer D. Hamilton
Texas Bar No. 24087656
spencer.hamilton@dentons.com
DENTONS US LLP
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
(Trial and Appellate Counsel)

No. 02-17-00366-CV

_____

SECOND DISTRICT COURT OF APPEALS

AT FORT WORTH, TEXAS

JONATHAN AFLATOUNI,

Appellant,

vs.

ENCLAVE AT GRAPEVINE, L.P.,

Appellee.

_____

**Request for Oral Argument**
_____

Appellant Jonathan Aflatouni hereby requests oral argument in this case. This appeal involves numerous complex issues, and oral argument will assist Appellant in the presentation of Appellant's arguments and responding to questions the Court may have.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..............................................................i

REQUEST FOR ORAL ARGUMENT ................................................................ iii

TABLE OF CONTENTS .....................................................................................iv

TABLE OF AUTHORITIES .................................................................................ix

INTRODUCTION.................................................................................................1

STATEMENT OF THE CASE................................................................................2

ISSUES PRESENTED FOR REVIEW ...................................................................3

STATEMENT OF FACTS .....................................................................................4

A.      In 2007, Aflatouni Sold the Property to Grapevine Diamond
        and Aflatouni Reserved a Vendor's Lien, While City Bank Received
        a Deed of Trust....................................................................................5

B.      City Bank Knew That Aflatouni Reserved a Vendor's Lien in the
        2007 Deed. ..........................................................................................5

C.      When Grapevine Defaulted, City Bank Conducted a Foreclosure Sale
        of the Property While Aflatouni Was in Bankruptcy, Which is a Violation
        of the Automatic Bankruptcy Stay......................................................7

D.      Aflatouni Notified the Substitute Trustee and City Bank That Aflatouni
        Filed for Bankruptcy Protection Before the Foreclosure Sale
        Was Conducted. ...................................................................................8

E.      After City Bank Purchased the Property at the Foreclosure Sale,
        City Bank Sold the Property to SPK, Which in Turn Sold the
        Property to Enclave..............................................................................9

F.     Claims Were Brought in the Collin County Case by Grapevine Diamond and Aflatouni Against City Bank, and Aflatouni Did Not Bring Claims Against Grapevine Diamond or the Subsequent Owners – SPK and Enclave..................................................................................9

G.     The Opinion Relied Upon By Enclave Does Not Contain a Holding Regarding the Voidness or Validity of the Foreclosure Sale. ........................10

H.     Aflatouni Demanded Payment by Grapevine Diamond After the Lawsuit Against City Bank Was No Longer Pending. ...................................11

SUMMARY OF ARGUMENT ......................................................................12

BRIEF OF ARGUMENT ..............................................................................14

STANDARD OF REVIEW - SUMMARY JUDGMENT.....................................14

ISSUE ONE (Restated) ................................................................................15
The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave and Denied Aflatouni's Motion for Summary Judgment Because It Is Undisputed  That Aflatouni is the Owner of An Unpaid Debt Secured by a Vendor's Lien – Aflatouni Is Entitled to a Judicial Rescission of his Vendor's Lien. (CR915, 921; App.62, 64)

ARGUMENT AND AUTHORITIES FOR ISSUE ONE.......................................15
A.     Aflatouni's Summary Judgment Evidence Established, and Enclave Did Not Dispute, That Aflatouni Holds a Vendor's Lien on the Grapevine Diamond Property. ........................................................................15

B.     Bank's Foreclosure Occurred After Aflatouni Filed For Bankruptcy Protection....................................................................................18

C.     Aflatouni Notified the Substitute Trustee and City Bank that Aflatouni Filed for Bankruptcy Protection Before the Foreclosure Sale. ......................19

D.     Enclave Does Not Dispute That Bank's Foreclosure Violated the Aflatouni Automatic Bankruptcy Stay Because Aflatouni's Vendor's Lien, as Legal Title to the Property, Is Property of the Bankruptcy Estate.............20

     1.     Applicable Law – the Bankruptcy Stay Generally. .............................20

2.   Applicable Law - Because a Second Lienholder's Lien is a
Property Right That is Protected by the Bankruptcy Stay,
a Foreclosure Sale of the Real Property that is the Subject of the
Lien Is a Violation of the Bankruptcy Stay. ........................22

    a.   *Three Strokes* (N.D. Texas) Unequivocally Holds the
Bankruptcy Stay Applies to Second Liens. ...........................22

    b.   Additional Opinions that Hold a Lienholder's Security
Interest Is a Property Right That Is Protected by the
Bankruptcy Stay. ........................23

3.   Aflatouni's Vendor's Lien Is Legal Title to the Property....................25

D.   Because the Foreclosure Sale Violated the Bankruptcy Stay,
the Correction Foreclosure Deed is Void Either in Its Entirety, or,
in the Alternative, as to Aflatouni's Vendor's Lien and Aflatouni's
Legal Title. ........................26

E.   Aflatouni Is Entitled To Rescind Aflatouni's Vendors' Lien. ........................27

ISSUE TWO (Restated) ........................28
The Trial Court Erred When It Granted Summary Judgment in Favor of
Enclave on Enclave's Collateral Estoppel Because: ((CR; App.)

ARGUMENT AND AUTHORITIES FOR ISSUE TWO ........................28

A.   Applicable Law – Trespass to Try Title........................28

B.   Aflatouni Has Superior Title Because the Foreclosure Sale Was Void –
City Bank Violated the Bankruptcy Stay.. ........................30

ISSUE THREE (Restated) ........................31
The Trial Court Erred When It Granted Summary Judgment in Favor of
Enclave on Aflatouni's Claim to Quiet Title and Remove Cloud on Title.
(CR921; App.64)

ARGUMENT AND AUTHORITIES FOR ISSUE THREE ........................31
A.   Applicable Law – Quiet Title and Remove Cloud on Title. ........................31

B.    Aflatouni's Summary Judgment Evidence Establishes Every Element of Aflatouni's Title Claims. ................................................................33

        1.    Aflatouni Has Right, Title, or Ownership in the Property....................33

        2.    City Bank's Corrected Foreclosure Deed, the Special Warranty Deed to SPK and the Warranty Deed to Enclave Are a Cloud on the Title....................................................................................34

        3.    Enclave's Claim is Invalid Because the Foreclosure Sale Violated the Automatic Bankruptcy Stay, and Thus the Foreclosure Sale is Void, in Whole or in Part. ......................................34

ISSUE FOUR (Restated)....................................................................................37
The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Enclave's Collateral Estoppel Defense Because the Court of Appeals Opinion Never Reached the Issue of Whether City Bank's Foreclosure Sale Was Void Because the Foreclosure Violated the Automatic Bankruptcy Stay, and Aflatouni Demanded Payment of His Loan After the Collin County Judgment  Was Entered and the Dallas Court of Appeals Issued Its Opinion. (CR921; App.64)

ARGUMENT AND AUTHORITIES FOR ISSUE FOUR ...................................37
A.    Applicable Law – Collateral Estoppel. .........................................................37

B.    The Court of Appeals Never Held the Foreclosure Sale Was Valid.............38

C.    Res Judicata, If It Had Been Pleaded By Enclave, Is Inapplicable – Aflatouni Demanded Payment in March of 2017 – Long After the Previous Litigation Concluded...................................................................39

D.    SPK and Enclave - the Subsequent Owners After City Bank - Were Not Parties to the Collin County Lawsuit. ...........................................41

PRAYER ............................................................................................................41

CERTIFICATE OF COMPLIANCE ...................................................................42

CERTIFICATE OF SERVICE ...........................................................................43

# APPENDIX

**Pg. #**   **Description**

1        CR66: Affidavit of J. Aflatouni

6        CR71: 2007 Special Warranty Deed (Vendor's Lien)

13     CR78: City Bank Letter (Sept.11, 2007)

14     CR79: Aflatouni Bankruptcy Petition (Dec. 6, 2010)

22     CR87: City Bank Notice of Trustee (Foreclosure) Sale (Dec. 10, 2010)

26     CR91: Correction Foreclosure Sale Deed (effective Jan. 4, 2011)

28     CR93: Foreclosure Sale Deed (Jan. 4, 2011)

33     CR98: Order Dismissing Aflatouni Bankruptcy (Jan. 12, 2011

36     CR120: Aflatouni Request for Payment to Grapevine Diamond (March 14, 2017)

37     CR220 - Opinion By Dallas Court of Appeals (Dec. 7, 2015)

62     CR915: Order Granting Enclave Motion for Partial Summary Judgment (May 26, 2017)

64     CR921: Final Judgment (Sept. 27, 2017)

68     *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499 (Tex. 1988).

# TABLE OF AUTHORITIES

**CASES:**                                                                                           **PAGE**

*Aguero v. Ramirez*,
      70 S.W.3d 372 (Tex. App.—Corpus Christi 2002, pet. denied)...................40

*Alkas v. United Sav. Ass'n of Tex., Inc.*,
      672 S.W.2d 852 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.)...........31

*Arlington v. McClure*,
      No. 02-06-296-CV, 2008 WL 755072 (Tex. App.—Fort Worth
      June 5, 2008, no pet.). ................................................................................40

*Bell v. Ott*,
      606 S.W.2d 942 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)..................32

*Bradford v. Thompson*,
      470 S.W.2d 633 (Tex. 1971)........................................................................26

*Bunn v. City of Laredo*,
      245 S.W. 426 (Tex. Comm'n App. 1922, judgm't adopted). ..................25, 26

*Cardinal Industries, Inc. v. Buckeye Federal Sav. & Loan Ass'n (In re Cardinal Industries, Inc.)*,
      105 B.R. 834 (Bankr. S.D. Ohio 1989)........................................................24

*Centeq Rlty., Inc. v. Siegler*,
      899 S.W.2d 195, 197 (Tex. 1995)................................................................14

*Chale Garza Invests., Inc. v. Madaria*,
      931 S.W.2d 597 (Tex. App.—San Antonio 1996, writ ref'd, n.r.e.)..............26

*Continental Casing Corp. v. Samedan Oil Corp.*,
      751 S.W.2d 499 (Tex. 1988) (copy at App.68). ...........................................26

*Diversified, Inc. v. Walker*,
      702 S.W.2d 717 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).....27

*Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*,
576 S.W.2d 794 (Tex. 1978)......................................................................30, 31

*Dominey v. The Unknown Heirs and Legal Representatives of Linda Lokomski*,
172 S.W.3d 67 (Tex. App.—Ft. Worth 2005, no pet.). ...........................15, 25

*Ellerd v. Ellison*,
165 S.W. 876 (Tex. Civ. App.—Amarillo 1914)............................................38

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*,
550 F.2d 47 (2nd Cir. 1976)...........................................................................24

*Flag-Redfern Oil Co. v. Humble Exploration Co.*,
744 S.W.2d 6 (Tex. 1987).........................................................................16, 25

*Florey v. Estate of McConnell*,
212 S.W.3d 439 (Tex. App.—Austin 2006, pet. denied)...............................32

*Florida Institute of Tech. v. Carpenter (In re Westec Corp.)*,
460 F.2d 1139 (5th Cir. 1972). ................................................................22, 23

*General Mills Restaurants, Inc. v. Tex. Wings, Inc.*,
12 S.W.3d 827 (Tex. App.—Dallas 2000, no pet.).......................................29

*Getty Oil Co. v. Ins. Co. of N. America*,
845 S.W.2d 794 (Tex. 1992)......................................................................38, 39

*Gordon v. W. Houston Trees, Ltd.*,
352 S.W.3d 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.). ..................33

*Hahn v. Love*,
321 S.W.3d 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).....32, 33

*Henke v. First S. Props., Inc.*,
586 S.W.2d 617 (Tex. Civ. App.—Waco 1979, writ ref'd, n.r.e.). ................27

*In re Capital Mortgage & Loan, Inc.*,
35 B.R. 967 (Bankr. E.D.Ca.1983). ..........................................................24, 25

*In re Chesnut*,
     422 F.3d 298 (5th Cir. 2005). ......................................................................22

*In re Cogar*,
     210 B.R. 803 (B.A.P. 9th Cir. 1997)......................................................23, 25

*In re McCarthy*,
     421 B.R. 550 (Bankr. D. Colo. 2009). .........................................................21

*In re Three Strokes Ltd. Partnership*,
     397 B.R. 804 (Bankr. N.D. Tex. 2008)..............................................22, 23, 24

*Lubbock v. Stubbs*,
     160 Tex, 111, 327 S.W.2d 411 (1959)..........................................................38

*Lusk v. Mintz*,
     625 S.W.2d 774 (Tex. App.—Houston [14th Dist.] 1981, no writ). ...........27

*McCombs v. McKaughan*,
     195 S.W.2dd 194 (Tex. Civ. App.—Beaumont 1946, writ ref'd). ...............38

*Maupin v. Chaney*,
     139 Tex. 426, 163 S.W.2d 380 (1942). ........................................................27

*MMP, Ltd. v. Jones*,
     710 S.W.2d 59, 60 (Tex. 1986)....................................................................14

*Monumental Life Insur. v. Bibo, Inc. (In re Bibo, Inc.)*,
     200 B.R. 348 (B.A.P. 9th Cir. 1996), *appeal dismissed and opinions
     vacated as moot*, 139 F.3d 659 (9th Cir. 1998). ......................................23, 25

*Oles v. Curl*,
     65 S.W.3d 129 (Tex. App.—Amarillo 2001, no pet.)...................................27

*Park Place Hosp. v. Estate of Milo*,
     909 S.W.2d 508, 509 (Tex. 1995)................................................................14

*Plumb v. Stuessy*,
     617 S.W.2d 667 (Tex. 1981)........................................................................29

*Poag v. Flories*,
    317 S.W.3d 820 (Tex. App.—Fort Worth 2010, pet. denied). ......................26

*Rogers v. Ricane Enters., Inc.*,
    884 S.W.2d 763 (Tex. 1994)....................................................................29, 31

*Segal v. Rochelle*,
    382 U.S. 375 (1966)..........................................................................................24

*Southwest Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture*,
    981 S.W.2d 951 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)...........32

*State v. Forest Lawn Lot Owners Ass'n*,
    152 Tex. 41, 254 S.W.2d 87 (1953).........................................................15, 27

*Sysco Food Servs. v. Trapnell*,
    890 S.W.2d 796 (Tex. 1994)...........................................................................38

*Thomson v. Locke*,
    66 Tex. 383, 1 S.W.112 (Tex. 1886). ............................................................32

*United States v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983).................................................................................21, 22

*Walton v. First Nat'l Bank of Trenton*,
    956 S.W.2d 647 (Tex. App.—Texarkana 1997, pet. denied). .......................15

*Whirlpool Corp. v. Camacho*,
    298 S.W.3d 631 (Tex. 2009)...........................................................................29

*Whiteside v. Bell*,
    347 S.W.2d 568 (Tex. 1961).............................................................27, 28, 39

*Wilen v. Falkenstein*,
    191 S.W.3d 791 (Tex. App.—Fort Worth 2006, pet. denied). ......................29

*Wright v. Matthews*,
    26 S.W.3d 575 (Tex. App.—Beaumont 2000, pet. denied)...........................32

**STATUTES AND RULES**    **PAGE**

11 U.S.C. § 362 .................................................................................................21, 23

11 U.S.C. § 541. ...................................................................................................21

TEX. PROP. CODE § 22.001. ..................................................................................29

TEX. R. CIV. P. 166a. ...........................................................................................14

No. 02-17-00366-CV

_____

SECOND DISTRICT COURT OF APPEALS

AT FORT WORTH, TEXAS

JONATHAN AFLATOUNI,

Appellant,

vs.

ENCLAVE AT GRAPEVINE, L.P.,

Appellee.

_____

**BRIEF OF APPELLANT JONATHAN AFLATOUNI**
_____

TO THE COURT OF APPEALS:

Appellant Jonathan Aflatouni ("Aflatouni" or "Appellant") submits this Appellant's' Brief. Enclave at Grapevine, L.P. will be referred to as "Enclave" or "Appellee."

Grapevine Diamond, L.P. will be referred to as "Grapevine Diamond." City Bank will be referred to as "Bank."

1

## STATEMENT OF THE CASE

On September 11, 2015, Aflatouni and Grapevine Diamond filed the Original Petition against the record holder of the real property, Enclave. (CR5[1]) On March 15, 2017, Aflatouni filed his Amended Petition requesting a judicial foreclosure of Aflatouni's vendor's lien and for property damage on neighboring property owned by Aflatouni. (CR24)

On April 7, 2017, Aflatouni filed his Motion for Summary Judgment and Response to Enclave's Motion for Summary Judgment ("Aflatouni's MSJ"). (CR41) On April 12, 2017, Enclave filed its Amended Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment "Enclave's MSJ"). (CR187) On April 27, Aflatouni filed a Response to Enclave's MSJ (CR259) and Enclave filed a response to Aflatouni's MSJ. (CR267)

On May 26, 2017, the trial court entered an Interlocutory Order granting Enclave's MSJ, and ruling that Aflatouni take nothing on his vendor lien claims. (CR915; App.62) Following a settlement of the property damage claim, the trial court entered a Final Summary Judgment on September 27, 2017. (CR921; App64).

Aflatouni filed a Notice of Appeal on October 24, 2017. (CR926)

---

[1]  References to the appellate record will be made as follows:
App.- Appendix to Brief    CR- Clerk's Record

## ISSUES PRESENTED FOR REVIEW

### ISSUE ONE
The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave and Denied Aflatouni's Motion for Summary Judgment Because It Is Undisputed That Aflatouni is the Owner of An Unpaid Debt Secured by a Vendor's Lien – Aflatouni Is Entitled to a Judicial Rescission of his Vendor's Lien. (CR915, 921; App.62, 64)

### ISSUE TWO
The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Aflatouni's Trespass to Try Title Claim. (CR921; App.64)

### ISSUE THREE
The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Aflatouni's Claim to Quiet Title and Remove Cloud on Title. (CR921; App.64)

### ISSUE FOUR
The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Enclave's Collateral Estoppel Defense Because the Court of Appeals Opinion Never Reached the Issue of Whether City Bank's Foreclosure Sale Was Void Because the Foreclosure Violated the Automatic Bankruptcy Stay, and Aflatouni Demanded Payment of His Loan After the Collin County Judgment Was Entered and the Dallas Court of Appeals Issued Its Opinion. (CR921; App.64)

## STATEMENT OF FACTS

While many Briefs represent that the facts are undisputed when they are not, the facts are genuinely undisputed in this case. Aflatouni established that Aflatouni owns a Vendor's Lien on the Property as shown on the 2007 Deed to Grapevine Diamond, and thus Aflatouni held legal title. Aflatouni also established that Aflatouni is unpaid, and therefore Aflatouni is entitled to rescind the Vendor's Lien and take back the Property. Aflatouni also established that the 2011 foreclosure sale by City Bank occurred while Aflatouni's Chapter 13 bankruptcy was pending, and pursuant to federal case law and multiple Texas Supreme Court opinions, the foreclosure sale violated the bankruptcy stay and is therefore void. Enclave never disputed these facts or the basic bankruptcy stay legal principle involved.

Thus, the disagreement between Aflatouni and Enclave, whose title is dependent upon the validity of the 2011 foreclosure sale, is whether Aflatouni's prior case against City Bank (not Grapevine Diamond) and the related Dallas Court of Appeals Opinion support Enclave's collateral estoppel defense. Aflatouni is entitled to enforce Aflatouni's Vendor's Lien unless there was a prior holding that the 2011 foreclosure sale was not a violation of the bankruptcy stay that would support a collateral estoppel defense (and to be clear, res judicata was not pleaded by Enclave and would be inapplicable if it was pleaded).

4

**A.**     **In 2007, Aflatouni Sold the Property to Grapevine Diamond and Aflatouni Reserved a Vendor's Lien, While City Bank Received a Deed of Trust.**

When Aflatouni sold approximately 10.5 acres of real property (the "Property") to Grapevine Diamond in 2007 for $8,500,000.00, Aflatouni retained a vendor's lien as shown on the deed (the "Deed") for the balance of the sales price that Aflatouni was not paid - $2,741,760.51. (CR66, App.1; CR71, App.6 – 2007 Deed)  In addition, City Bank financed the purchase by Grapevine Diamond in part by lending $6,375,000.00 and City Bank received a Deed of Trust from Grapevine Diamond. (CR71, 73; App.6, 8 – 2007 Deed)

A Special Warranty Deed (Vendor's Lien) (the "Deed") was received by Grapevine Diamond when it purchased the Property.  (CR66, App.1; CR74, App.9 - Deed) The Deed states the Vendor, the Aflatounis, retained a Vendor's Lien when the Property was sold to Grapevine Diamond.  (CR66, 71; App.1, 6) The Vendor's Lien and superior title was retained by the Vendor until the City Bank debt and the Second Lien Note were paid by Grapevine Diamond. (CR66, 73-74; App.1, 8-9) The Vendor's Lien was subordinated to City Bank's debt until the City Bank debt was paid by Grapevine Diamond. (CR66, 74; App.1, 9)

**B.**     **City Bank Knew That Aflatouni Reserved a Vendor's Lien in the 2007 Deed.**

Aflatouni and Grapevine Diamond communicated to City Bank, before the real property was sold to Grapevine Diamond, that Grapevine Diamond would be providing

additional consideration to Aflatouni of $2,740,700.51 at the time of the closing. (CR67; App.2) In response, on or about September 11, 2007, City Bank sent a letter to the Fidelity Title, Inc. Escrow Officer (the "City Bank Letter"). (CR 67, App.2; CR78; App.13 – City Bank Letter) The City Bank Letter states that City Bank knew on September 11, 2007, which was before the closing on September 12, 2007, that Jonathan Aflatouni would be entitled to receive $2,740,700.51 at the closing, but that he may not actually receive the cash at closing. (CR67, 78; App.2, 13)

As part of the closing on September 12, 2007, Grapevine Diamond received a loan from Jonathan Aflatouni in the amount of $2,741,760.51 as reflected on the Settlement Statement as part of the purchase price for the Property. (CR68; App.3) This loan was to be paid off on demand, which was to be no earlier that when Grapevine Diamond sold the property or developed the property itself. (CR68; App.3) This loan accrued interest at an annual rate of 7.00% simple interest. (CR69; App.4) On July 19, 2013, Youval Zive, in his capacity as President of Danjon, Inc., Grapevine Diamond's general partner, executed a Replacement Promissory Note reflecting the terms of the original promissory note. (CR69, App.4; CR101) This loan has not been repaid. (CR70)

City Bank did not dispute that Aflatouni loaned Grapevine Diamond the $2.7 million when Grapevine Diamond purchased the Property in 2007. (CR162) Further,

6

Wilcox admitted that Aflatouni was not a partner in Grapevine Diamond, and that City Bank's letter stated that Aflatouni was not a partner. (CR162).

City Bank's designee, Wilcox, testified that his understanding was that the use of the two words "Vendor's Lien" on the first page of the Special Warranty Deed immediately below the title "Special Warranty Deed" was an indication that the vendors held a lien on the Property. (CR154-55; CR172 -Wilcox Depo, Exh. 6, 2007 Deed) The bank would typically have the deed in its file when it makes a loan to buy property − the Special Warranty Deed would be included in the closing documents. (CR155-56)

## C. When Grapevine Defaulted, City Bank Conducted a Foreclosure Sale of the Property While Aflatouni Was in Bankruptcy, Which is a Violation of the Automatic Bankruptcy Stay.

On December 6, 2010, Jonathan Aflatouni filed an Original Petition (the "Aflatouni Bankruptcy") in the Bankruptcy Court of the Northern District of Texas under chapter 13, in cause no. 10-38538-sgj13 (the "Aflatouni Bankruptcy Petition"). (CR67, App.2; CR79, App.14 - Aflatouni Bankruptcy Petition)

On or about December 9, 2010, while Aflatouni's bankruptcy case was pending and thus in violation of the automatic bankruptcy stay, City Bank filed its Notice of Foreclosure Sale (the "Foreclosure Notice") for a January 4, 2011 sale of the property owned by Grapevine Diamond and the subject of Aflatouni's Vendor's Lien. (CR67, App.67; CR87, App22 - Foreclosure Notice)

On or about January 4, 2011, while Aflatouni's bankruptcy case was pending and in violation of the automatic bankruptcy stay, a substitute trustee appointed by City Bank conducted a foreclosure sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. (CR67, App3; CR91, App.26 - Correction Foreclosure Sale Deed)  While Aflatouni's bankruptcy case was pending and in violation of the automatic bankruptcy stay, City Bank recorded its Correction Foreclosure Deed in the real property records of Tarrant County, Texas on or about January 12, 2011. (CR91, App.26 - Correction Foreclosure Sale Deed)

On January 14, 2011, an Order Dismissing Chapter 13 Case (the "Bankruptcy Dismissal Order") was entered in the Aflatouni Bankruptcy.  (CR68, App.3; CR98; App.33 -  Order Dismissing Chapter 13 Case and Notice of Dismissal)

**D.     Aflatouni Notified the Substitute Trustee and City Bank That Aflatouni Filed for Bankruptcy Protection Before the Foreclosure Sale Was Conducted.**

City Bank's designee, Wilcox, admitted that City Bank knew that Aflatouni filed for bankruptcy protection on December 6, 2011 around the time the bankruptcy petition was filed. (CR163) Jonathan Aflatouni attended the foreclosure sale on January 4, 2011. (CR68; App.3) Before the sale began, Jonathan Aflatouni informed the substitute trustee conducting the foreclosure sale of the Property, and also the City Bank employee that was present at the sale, that Jonathan Aflatouni had filed for bankruptcy protection. (CR68; App.3) The substitute trustee and the City Bank

8

employee told Jonathan Aflatouni that Jonathan Aflatouni's filing for bankruptcy protection was unimportant. (CR68; App.3)

**E.    After City Bank Purchased the Property at the Foreclosure Sale, City Bank Sold the Property to SPK, Which in Turn Sold the Property to Enclave.**

Enclave claims title based upon: (1) a Deed of Trust executed by Grapevine Diamond, L.P. in favor of City Bank on or about September 10, 2007 and foreclosure sale (CR91, App.26 - Correction Foreclosure Sale Deed); (2) a Special Warranty Deed executed by City Bank to SPK Land Acquisition, LLC ("SPK") (CR102 - Special Warranty Deed to SPK); and (3) a Warranty Deed executed by SPK to Enclave(CR112 - Warranty Deed by SPK to Enclave).

**F.    Claims Were Brought in the Collin County Case by Grapevine Diamond and Aflatouni Against City Bank, and Aflatouni Did <u>Not</u> Bring Claims Against Grapevine Diamond or the Subsequent Owners - SPK and Enclave.**

On September 29, 2011, City Bank executed the Special Warranty Deed to SPK Land Acquisition, LLC (CR102 - Special Warranty Deed to SPK). On October 5, 2012, SPK executed a Warranty Deed to Enclave (CR112 - Warranty Deed by SPK to Enclave). SPK and Enclave are not parties to the Dallas appeal. (CR220; App.37) Aflatouni's Motion for Summary Judgment filed in the Collin County case, the Order granting City Bank's Motion for Summary Judgment and the Final Judgment (these three documents are included as exhibits to Enclave's MSJ Response), shows that SPK

9

and Enclave are not parties to the Collin County case. (CR288, 364, 367) There is no mention of a claim by Aflatouni to rescind the vendor's lien in these documents.

## G. The Opinion Relied Upon By Enclave Does <u>Not</u> Contain a Holding Regarding the Voidness or Validity of the Foreclosure Sale.

Enclave's Motion for Summary Judgment relies upon three exhibits: (1) the Interlocutory Order granting City Bank's Motion for Summary Judgment (CR217); (2) the Opinion of the Dallas Court of Appeals (CR220; App.37); and (3) the United States Supreme Court's letter stating that the petition for writ of certiori was denied. (CR246) The Interlocutory Order and Opinion relied upon by Enclave contain no holding regarding the voidness or validity of the foreclosure sale. (CR217; CR220, App.37 – Opinion) Instead, the Court of Appeals held that there was "no equity in the property" (CR230, App.47 – Opinion) and that "no summary judgment evidence that the property's value exceeded the amount stated on Grapevine Diamond's bankruptcy schedules, and the property was sold for less than the amount of City Bank's secured claim" (CR231, App.48 – Opinion) As a result, the Court of Appeals overruled the "portions . . . of the issues alleging that summary judgment for City Bank was improper because the foreclosure sale allegedly violated the stay in Aflatouni's bankruptcy." (CR231, App.48 – Opinion)

**H.** **Aflatouni Demanded Payment by Grapevine Diamond <u>After</u> the Lawsuit Against City Bank Was No Longer Pending.**

Notably, Aflatouni did not demand payment upon the debt that is secured by the Vendors' Lien until March of 2017 (and long after the Court of Appeals Opinion relied upon by Enclave). (CR70, App.5; CR120, App.36 - Demand for Payment) The purchase money has not been paid. (CR70, App.5)

Aflatouni indisputably is the owner of Aflatouni's Vendor's Lien as shown on the 2007 Deed so that Aflatouni held legal title, and Aflatouni is unpaid. The undisputed evidence is that City Bank's posting of the property for foreclosure and the foreclosure sale itself occurred while Aflatouni's bankruptcy was pending, violating the automatic stay in Aflatouni's bankruptcy. Because the foreclosure sale was a violation of the automatic bankruptcy stay, the sale is void as to Aflatouni's Vendor's Lien and Aflatouni's legal title in the Property.

Next, because a void deed does not transfer title to the grantee (City Bank) – the foreclosure sale deed to City Bank is "without vitality or legal effect" as stated in this Court's *Poag* opinion. Because City Bank lacked title, the subsequent deed form City Bank to SPK, and the deed from SPK to Enclave, also did not convey title.

Faced with the fact that Enclave wholly lacked title, City Bank bootstrapped a collateral estoppel defense based upon the Collin County case. Tellingly, while Enclave's Motion for Summary Judgment refers to its summary judgment ground as being a collateral estoppel defense, Enclave does not identify the "identical issue" already decided in the Collin County litigation. (CR206 – Enclave MSJ ¶ 8) Instead, Enclave merely asserts that the Collin County cause of action and the current cause of action both involved City Bank's violation of the automatic bankruptcy stay. (CR208 – Enclave MSJ ¶ 14) Put simply, while both cases involved this issue, Enclave wholly

12

fails to point the trial court in the present case exactly where this issue was decided against Aflatouni. The reason is simple - it wasn't. As a result, Enclave's collateral estoppels defense fails.

Further, while Enclave wisely chose not to argue res judicata barred Aflatouni's claims, this is essentially what Enclave is really arguing here. Notably, because Aflatouni did not demand payment from Grapevine Diamond until March 2017, which is after the Collin County litigation and appellate process concluded, Aflatouni's cause of action against Grapevine Diamond did not accrue before the Final Judgment was entered in the Collin County litigation.

# BRIEF OF ARGUMENT

## STANDARD OF REVIEW - SUMMARY JUDGMENT

The movant is entitled to summary judgment if it shows there is no genuine issue as to a material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A plaintiff-movant is entitled to summary judgment on its cause of action if it establishes all the elements of its cause of action. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

A defendant-movant is entitled to summary judgment if it establishes all the elements of its defense or disproves one element of the plaintiff's cause of action. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 509 (Tex. 1995). If a defendant-movant disproves as a matter of law an element of the plaintiff's cause of action, the defendant is entitled to summary judgment unless the plaintiff can either identify a fact issue in the elements the defendant negated or create a fact issue by producing controverting evidence that raises a fact issue on one of the elements the defendant negated. *See Centeq Rlty., Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

(Restated)

**The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave and Denied Aflatouni's Motion for Summary Judgment Because It Is Undisputed That Aflatouni is the Owner of An Unpaid Debt Secured by a Vendor's Lien – Aflatouni Is Entitled to a Judicial Rescission of his Vendor's Lien. (CR915, 921; App.62, 64)**

**ARGUMENT AND AUTHORITIES FOR ISSUE ONE**

**A.      Aflatouni's Summary Judgment Evidence Established, and Enclave Did Not Dispute, That Aflatouni Holds a Vendor's Lien on the Grapevine Diamond Property.**

The undisputed facts establish that Aflatouni retained a vendor's lien when the Property was sold to Grapevine Diamond – the 2007 Deed expressly reserved a vendor's lien.  (CR71; App.6) A grantor's express reservation of title in a deed is sufficient to create a vendor's lien and reserve superior legal title. *State v. Forest Lawn Lot Owners Ass'n*, 152 Tex. 41, 254 S.W.2d 87 (1953); *Walton v. First Nat'l Bank of Trenton*, 956 S.W.2d 647, 650 (Tex. App.-Texarkana 1997, writ denied).  Superior title is held by the vendor where an express vendor's lien is retained to secure unpaid purchase money, and the vendee has a mere equitable right to acquire title by carrying out the agreement. *State v. Forest Lawn Lot Owners Ass'n*, 152 Tex. 41, 254 S.W.2d 87, 91 (1953); *Dominey v. The Unknown Heirs and Legal Representatives of Linda Lokomski*, 172 S.W.3d 67, 74 (Tex. App.—Ft. Worth 2005, no pet.). "[I]f a vendor's

15

lien encumbers the land, legal title does not pass to the vendee." *Flag-Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987).

A Special Warranty Deed (Vendor's Lien) (the "Deed") was received by Grapevine Diamond when it purchased the Property. (CR66, App.1; CR71, App.6 - 2007 Deed) The Deed states the Vendor, the Aflatounis, retained a Vendor's Lien when the Property was sold to Grapevine Diamond. (CR66, App.1; CR71, App.6 - 2007 Deed) The Vendor's Lien and superior title was retained by the Vendor until the City Bank debt and the Second Lien Note were paid by Grapevine Diamond. (CR66, App.1; CR73-74, App.8-9 - 2007 Deed) The Vendor's Lien was subordinated to City Bank's debt until the City Bank debt was paid by Grapevine Diamond. (CR66, App.1; CR74, App.9 - 2007 Deed)

Aflatouni and Grapevine Diamond communicated to City Bank, before the real property was sold to Grapevine Diamond, that Grapevine Diamond would be providing additional consideration to Aflatouni of $2,740,700.51 at the time of the closing. (CR67) In response, on or about September 11, 2007, City Bank sent a letter to the Fidelity Title, Inc. Escrow Officer (the "City Bank Letter"). (CR67, App.2; CR78, App.13 - City Bank Letter) The City Bank Letter states that City Bank knew on September 11, 2007, which was before the closing on September 12, 2007, that Jonathan Aflatouni would be entitled to receive $2,740,700.51 at the closing, but that

he may not actually receive the cash at closing. (CR67, App.2; CR78, App.13 - City Bank Letter)

As part of the closing on September 12, 2007, Grapevine Diamond received a loan from Jonathan Aflatouni in the amount of $2,741,760.51 as reflected on the Settlement Statement as part of the purchase price for the Property. (CR68:App.3) This loan was to be paid off on demand, which was to be no earlier that when Grapevine Diamond sold the property or developed the property itself. (CR68; App.3) This loan accrued interest at an annual rate of 7.00% simple interest. (CR69; App.4) On July 19, 2013, Youval Zive, in his capacity as President of Danjon, Inc., Grapevine Diamond's general partner, executed a Replacement Promissory Note reflecting the terms of the original promissory note. (CR69, App.4; CR101) This loan has not been repaid, and Aflatouni demanded payment on March 14, 2017. (CR70, App.5; CR120, App.36 – Aflatouni Request for Payment)

City Bank did not dispute that Aflatouni loaned Grapevine Diamond the $2.7 million when Grapevine Diamond purchased the Property in 2007. (CR162) Further, Wilcox admitted that Aflatouni was not a partner in Grapevine Diamond, and that City Bank's letter stated that Aflatouni was not a partner. (CR162)

City Bank's designee, Wilcox, testified that his understanding was that the use of the two words "Vendor's Lien" on the first page of the Special Warranty Deed immediately below the title "Special Warranty Deed" was an indication that the

17

vendors held a lien on the Property. (CR154-55; CR172 - Wilcox Depo, Exh. 6, 2007 Deed) The bank would typically have the deed in its file when it makes a loan to buy property – the Special Warranty Deed would be included in the closing documents. (CR154-55) Wilcox also admitted that City Bank's title insurer understood, based upon the title policy document, that a vendor's lien was being retained. (CR158-59; CR177 - Wilcox Depo. Exh. 11, Title Policy)

Aflatouni's summary judgment evidence establishes as a matter of law that Aflatouni holds a vendor's lien on the Property.

**B.    Bank's Foreclosure Occurred <u>After</u> Aflatouni Filed For Bankruptcy Protection.**

In summary, the undisputed evidence establishes that after Aflatouni filed his bankruptcy petition and that before the Aflatouni bankruptcy proceeding was dismissed, City Bank posted the Property for foreclosure and City Bank's substitute trustee conducted a foreclosure sale.

On December 6, 2010, Jonathan Aflatouni filed an Original Petition (the "Aflatouni Bankruptcy") in the Bankruptcy Court of the Northern District of Texas under chapter 13, in cause no. 10-38538-sgj13 (the "Aflatouni Bankruptcy Petition"). (CR67, App.2; CR79, App.14 - Aflatouni Bankruptcy Petition)

On or about December 9, 2010, in violation of the automatic bankruptcy stay, City Bank filed its Notice of Foreclosure Sale (the "Foreclosure Notice") for a January

18

4, 2011 sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. (CR67, App.2; CR87, App.22 - Foreclosure Notice)

On or about January 4, 2011, in violation of the automatic bankruptcy stay, a substitute trustee appointed by City Bank conducted a foreclosure sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. (CR68; App.3; CR91, App.26 - Correction Foreclosure Sale Deed. City Bank recorded its Foreclosure Sale Deed on January 5, 2011 (CR.93; App.28) and City Bank's Correction Foreclosure Deed in the real property records of Tarrant County, Texas on or about January 12, 2011. (CR91; App.26 - Correction Foreclosure Sale Deed.

On January 14, 2011, an Order Dismissing Chapter 13 Case (the "Bankruptcy Dismissal Order") was entered in the Aflatouni Bankruptcy. (CR68; App.3; CR98, App.33 - Order Dismissing Chapter 13 Case and Notice of Dismissal)

## C. Aflatouni Notified the Substitute Trustee and City Bank that Aflatouni Filed for Bankruptcy Protection Before the Foreclosure Sale.

City Bank knew that Aflatouni filed for bankruptcy protection on December 6, 2011 around the time the bankruptcy petition was filed. (CR163) Jonathan Aflatouni attended the foreclosure sale on January 4, 2011. (CR68; App.3) Before the sale began, Jonathan Aflatouni informed the substitute trustee conducting the foreclosure

19

sale of the Property, and also the City Bank employee that was present at the sale, that Jonathan Aflatouni had filed for bankruptcy protection. (CR68; App.3) The substitute trustee and the City Bank employee told Jonathan Aflatouni that Jonathan Aflatouni's filing for bankruptcy protection was unimportant. (CR68; App.3)

**D.** **Enclave Does Not Dispute That Bank's Foreclosure Violated the Aflatouni Automatic Bankruptcy Stay Because Aflatouni's Vendor's Lien, as Legal Title to the Property, Is Property of the Bankruptcy Estate.**

Indisputably, City Bank filed its Notice of Foreclosure Sale and the substitute trustee conducted the foreclosure sale following the date that Aflatouni filed his Original Petition in the Bankruptcy Court, and while Aflatouni's bankruptcy proceeding was pending. Enclave's Motion for Summary Judgment does not argue otherwise. (CR187)

**1.** **Applicable Law – the Bankruptcy Stay Generally.**

Subject to limited exceptions not relevant here, upon the commencement of a debtor's bankruptcy case, section 362(a) of the Bankruptcy Code operates as a stay, applicable to all entities, of (in pertinent part):

(3)    any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4)    any act to create, perfect, or enforce any lien against property of the estate;

(5)    any act to create, perfect, or enforce against property of the debtor any lien to the extent such lien secures a claim that arose before the commencement of the case under [the Bankruptcy Code];

20

11 U.S.C. §362(a)(3) – (5). "The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) (citing legislative history of Section 541). The scope of the automatic stay is extremely broad, and it forecloses a range of activities aimed at collecting a debt, including threats of immediate action by creditors. *In re McCarthy*, 421 B.R. 550, 565 (Bankr. D. Colo. 2009).

Bankruptcy Code section 541(a) contains an expansive definition of property of a debtor's estate. 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) ("The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property ....") (citing legislative history of Section 541). In bankruptcy contexts, "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966).

2. **Applicable Law - Because a Second Lienholder's Lien is a Property Right That is Protected by the Bankruptcy Stay, a Foreclosure Sale of the Real Property that is the Subject of the Lien Is a Violation of the Bankruptcy Stay.**

a. *Three Strokes* **(N.D. Texas) Unequivocally Holds the Bankruptcy Stay Applies to Second Liens.**

A lien secured by real property and held by a debtor that has filed a bankruptcy case "is, indeed, a property interest that triggers the protection of the automatic stay. It is a property interest as contemplated under Section 541 of the Bankruptcy Code." *In re Three Strokes Ltd. Partnership*, 397 B.R. 804 (Bankr. N.D. Tex. 2008) (citing *Whiting Pools, Inc.*, 462 U.S. at 205 n.9.).

In *In re Three Strokes*, the Honorable Judge Jernigan addressed a situation similar to the one at hand - a senior lienholder attempted to foreclose on property that was subject to the debtor's junior lien. Judge Jernigan, relying on Fifth Circuit authority,[2] unequivocally held that a foreclosure by a first lienholder on property that is

---

2 *Florida Institute of Tech. v. Carpenter (In re Westec Corp.)*, 460 F.2d 1139, 1142 (5th Cir. 1972) "Certainly, this [lienholder] interest constitutes `property' within the meaning of Sections 111 and 148 of the Bankruptcy Act, as `property' can constitute something other than fee ownership"); *In re Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005) (property that could arguably have been community property at the time of a foreclosure sale violated the automatic stay resulting from the husband's bankruptcy, even though the property might ultimately be determined to be the wife's separate property).

the subject of a second lien held by a bankruptcy debtor is automatically stayed – the

second lien is property of the bankruptcy estate[3]:

> To reiterate, **the Arizona Property itself is certainly not property of the estate, but the second lien interest of the Debtor in that property is a property interest worthy of recognition and protection. Thus, Section 362 applies to automatically stay the foreclosure proceedings.** The foreclosure proceedings could have the effect of extinguishing the Debtor's second lien interest. The foreclosure proceedings would constitute an exercise of control over property of the estate, pursuant to Bankruptcy Code Section 362(a)(3). The court recognizes that . . . Conseco [the senior lienholder] is not a creditor of this Debtor. However, Section 362(a) is worded to prevent "all entities" (not merely creditors) from engaging in certain acts including "an act ... to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

*Id*., at 807 (emphasis added).

### b. Additional Opinions that Hold a Lienholder's Security Interest Is a Property Right That Is Protected by the Bankruptcy Stay.

Unsurprisingly, there are a number of opinions whose holdings are consistent

with *Three Strokes* – a foreclosure sale that would wipe out a second lien held by a

bankrupt debtor is a violation of the automatic stay. *In re Westec Corp*., 460 F.2d at

1142 (holding that taxing authorities' foreclosure proceedings as to underlying real

property violated the automatic stay in a lienholder's bankruptcy); *Monumental Life*

---

3 Similarly, the Ninth Circuit holds a debtor's lien interest is property of the bankruptcy estate:

> [A] bankruptcy estate is comprised of all legal and equitable interest in debtor's property as of the filing of the bankruptcy petition. Therefore, since a lien is considered a beneficial or equitable interest in property, and it was in existence prior to the debtor's filing bankruptcy, the lien interest is considered part of the bankruptcy estate.

*In re Cogar*, 210 B.R. 803, 809 (B.A.P. 9th Cir. 1997) (cit. omitted).

*Insur. v. Bibo, Inc. (In re Bibo, Inc.)*, 200 B.R. 348 (B.A.P. 9th Cir. 1996), *appeal dismissed and opinions vacated as moot*, 139 F.3d 659 (9th Cir. 1998) (debtor's interest as junior deed of trust holder was included in property of the estate and senior lienholder's proposed foreclosure was attempt to exercise control over property of debtor in violation of the automatic stay).

Further, courts considering the scope of the automatic stay have applied it broadly. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2nd Cir. 1976) (citing *Segal*, 382 U.S. at 379-81) (security interest under a deed of trust was a property interest for the purposes of the bankruptcy statutes and within the scope of the bankruptcy stay).

The *Three* Strokes opinion cites to additional cases holding a lien is "property" that is subject to the bankruptcy stay. *Three Strokes,* 397 B.R. at 807 (citing *In re Capital Mortgage & Loan, Inc.*, 35 B.R. 967 (Bankr. E.D.Ca.1983) (holding that a senior lien holder's cancellation of a loan to third party trustors and taking of a quitclaim deed from the trustors in lieu of foreclosure violated the automatic stay of the junior lien holder, who was a debtor in bankruptcy)); *Cardinal Industries, Inc. v. Buckeye Federal Sav. & Loan Ass'n (In re Cardinal Industries, Inc.)*,105 B.R. 834 (Bankr. S.D. Ohio 1989) (finding that the debtor's unrecorded second mortgage interest became property of the estate upon the debtor's bankruptcy filing and protected by the automatic stay from the first mortgage holder's foreclosure of its lien)).

24

Similarly, the Ninth Circuit has held that a debtor's lien interest is property of the bankruptcy estate:

> Under § 541(a), at the time a debtor files bankruptcy, all of the debtor's property becomes property of the bankruptcy estate. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647-48, 118 L.Ed.2d 280 (1992). **Property is defined broadly and includes "charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interest that the debtor may have in property of another**." 124 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978) (Statement of Rep. Edwards); *In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983) .

> \* \* \*

> [A] bankruptcy estate is comprised of all legal and equitable interest in debtor's property as of the filing of the bankruptcy petition. Therefore, since a lien is considered a beneficial or equitable interest in property, and it was in existence prior to the debtor's filing bankruptcy, the lien interest is considered part of the bankruptcy estate.

*In re Cogar*, 210 B.R. 803, 809 (B.A.P. 9th Cir. 1997) (emphasis added) (citing *Capital Mortg.*, 35 B.R. at 970; *Bibo*, 200 B.R. at 350.

**3. Aflatouni's Vendor's Lien Is Legal Title to the Property.**

Again, "if a vendor's lien encumbers the land, legal title does not pass to the vendee." *Flag-Redfern Oil Co.*, 744 S.W.2d at 8; *see Dominey*, 172 S.W.3d at 74. Aflatouni is the owner of the Vendor's Lien and thus holds legal title. (CR68-69; App.3-4; CR71, App.71 – 2007 Deed) The court in *Bunn v. City of Laredo*, 245 S.W. 426, 429 (Tex. Comm'n App. 1922, judgm't adopted), said:

> It has been the uniform holding of our courts from the earliest times that, however absolute may be the terms of such conveyance, the contract of sale is

treated as executory between the vendor and vendee and those holding under them until the purchase money is fully satisfied; and that, in addition to all other remedies to enforce payment of the purchase money, the vendor has the alternative remedy, so long as the purchase money is not paid, to rescind the contract of sale and recover the land upon the strength of his superior title as an unsatisfied vendor. This remedy to rescind and resort to the superior legal title has uniformly been held to be separate and distinct from and wholly independent of the remedy to subject the land to the payment of the purchase money by sale under foreclosure.

*Bunn*, 625 S.W.2d at 776.

**D.** **Because the Foreclosure Sale Violated the Bankruptcy Stay, the Correction Foreclosure Deed is Void Either in Its Entirety, or, in the Alternative, as to Aflatouni's Vendor's Lien and Aflatouni's Legal Title.**

"An action taken in violation of the automatic stay is void, not merely voidable."

*Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988) (cit. omitted) (App.68) Because the foreclosure sale violated the bankruptcy stay, the Correction Foreclosure Sale Deed is void either in its entirety or, in the alternative, as to the Vendors' Lien. *See Poag v. Flories*, 317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied) ("A void deed is without vitality or legal effect."); *see also Bradford v. Thompson*, 470 S.W.2d 633, 635, 637 (Tex. 1971) (concluding that a foreclosure was "null and void[ ]" and therefore declaring that a trustee's deed arising from the foreclosure was "cancelled and held for naught [ ]"). A foreclosure sale that occurs during the automatic stay is void and passes no title. *Oles v. Curl*, 65 S.W.3d 129, 132 (Tex. App.—Amarillo 2001, no pet.). When a foreclosure sale is void, title to property does not transfer and the purchaser takes no title. *Chale Garza Invests., Inc. v.*

26

*Madaria,* 931 S.W.2d 597, 600 (Tex. App.—San Antonio 1996, writ ref'd, n.r.e.);

*Diversified, Inc. v. Walker,* 702 S.W.2d 717, 721 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Henke v. First S. Props., Inc.,* 586 S.W.2d 617, 620 (Tex. Civ. App.—Waco 1979, writ ref'd, n.r.e.).

Indisputably, as shown above, City Bank filed its Notice of Foreclosure Sale and the substitute trustee conducted the foreclosure sale following the date that Aflatouni filed his Original Petition in the Bankruptcy Court, and while Aflatouni's bankruptcy proceeding was pending. Enclave does not dispute that because the foreclosure sale violated the bankruptcy stay and that the Correction Foreclosure Sale Deed is void either in its entirety or, in the alternative, as to Aflatouni's Vendors' Lien and Aflatouni's legal title. Aflatouni's summary judgment evidence establishes this as a matter of law.

**E. Aflatouni Is Entitled To Rescind Aflatouni's Vendors' Lien.**

A holder of a vendor's lien possesses superior title and has the right to rescind the vendor's lien upon a default by the vendee. *Whiteside v. Bell,* 347 S.W.2d 568, 570 (Tex. 1961) (citing *Maupin v. Chaney,* 139 Tex. 426, 163 S.W.2d 380, 384 (1942). When an express vendor's lien is retained to secure unpaid purchase money, superior legal title remains in the vendor until the purchase money is paid. *Lusk v. Mintz,* 625 S.W.2d 774, 775 (Tex. App.—Houston [14th Dist.] 1981, no writ) (citing *State v. Forest Lawn Lot Owners Ass'n,* 152 Tex. 41, 254 S.W.2d 87 (1953)).

Aflatouni demanded payment on March 14, 20174. (CR70, App.5; CR120, App.36 - Demand for Payment)  The purchase money has not been paid. (CR70, App.5) Aflatouni's summary judgment evidence established as a matter that Aflatouni is entitled to the rescission of Aflatouni's Vendors' Lien, and elected a rescission and entry of summary judgment rescinding the Vendors' Lien and placing title to the real property in Aflatouni. (CR29, 42, 53)

Aflatouni established his right to rescind the Vendor's Lien as a matter of law, as argued in Aflatouni's Motion for Summary Judgment, and contrary to Enclave's argument in Enclave's Motion for Summary Judgment.

## ISSUE TWO

### (Restated)

**The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Aflatouni's Trespass to Try Title Claim. (CR921; App.64)**

**ARGUMENT AND AUTHORITIES FOR ISSUE TWO**

**A.      Applicable Law – Trespass to Try Title.**

When the vendee defaults in the payment of the purchase price, the holder of a vendor's lien "may file a suit in trespass to try title to recover the land thereby effecting a rescission." *Whiteside*, 347 S.W.2d at 570.

---

4 As discussed below, because the demand for payment occurred <u>after</u> the final judgment in the Collin County case, Aflatouni's cause of action seeking a rescission of Aflatouni's Vendor's Lien had not yet accrued, and therefore a res judicata defense, if Enclave had pleaded res judicata, is inapplicable.

A trespass to try title action is the method of determining title to lands, tenements, or other real property. TEX. PROP. CODE §22.001(a). Trespass to real property occurs when a person enters another's land without consent. *Wilen v. Falkenstein*, 191 S.W.3d 791, 797 (Tex. App.—Fort Worth 2006, pet. denied); *General Mills Restaurants, Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.— Dallas 2000, no pet.). To recover for a trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff. *Wilen*, 191 S.W.3d at 798. The plaintiff in a trespass to try title action is required to prove its title by proving (1) a regular chain of conveyances from the sovereign to the plaintiff, (2) a superior title to that of the defendant out of a common source, (3) title by limitations, or (4) prior possession, which prior possession has not been abandoned. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). In a trespass-to-try-title action, a plaintiff recovers on the strength of his or her own title. *Plumb v. Stuessy*, 617 S.W.2d 667 (Tex. 1981).

A ***valid*** foreclosure on a senior lien (sometimes referred to as a "superior" lien) extinguishes a junior lien (sometimes referred to as "inferior" or "subordinate") if there are not sufficient excess proceeds from the foreclosure sale to satisfy the

junior lien. *Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 808 (Tex. 1978).

**B.      Aflatouni Has Superior Title Because the Foreclosure Sale Was Void – City Bank Violated the Bankruptcy Stay.**

As discussed above, a Special Warranty Deed (Vendor's Lien) (the "Deed") was received by Grapevine Diamond when it purchased the Property.  (CR66, App.1; CR71, App.6 - 2007 Deed) The Deed states the Vendor retained a Vendor's Lien when the Property was sold to Grapevine Diamond.  (CR66, App.1; CR71, 74, App.6, 9 - 2007 Deed) The Vendor's Lien and superior title was retained by the Vendor until the City Bank debt and the Second Lien Note were paid by Grapevine Diamond. (CR66, App.1; CR74, App.9 - 2007 Deed) The Vendor's Lien was subordinated to City Bank's debt until the City Bank debt was paid by Grapevine Diamond. (CR66, App.1; CR74, App.9 - 2007 Deed)

Enclave claims title based upon: (1) a Deed of Trust executed by Grapevine Diamond, L.P. in favor of City Bank on or about September 10, 2007 and foreclosure sale (CR91, App.26 - Correction Foreclosure Sale Deed); (2) a Special Warranty Deed executed by City Bank to SPK Land Acquisition, LLC (CR102 - Special Warranty Deed to SPK); and (3) a Warranty Deed executed by SPK Land Acquisition, LLC to Enclave LLC (CR112 - Warranty Deed by SPK to Enclave).  Clearly Enclave's title claim is dependent upon the validity of the foreclosure sale, and Aflatouni's title claim

30

is superior to Enclave's title if the foreclosure was void, in whole or in part, as argued above. *See Rogers*, 884 S.W.2d at 768. Aflatouni's vendor's lien and Aflatouni's legal title would only be extinguished by a valid foreclosure sale. *See Diversified Mortg. Investors*, 576 S.W.2d at 808.

In conclusion, Aflatouni's summary judgment evidence establishes as a matter of law, and contrary to Enclave's Motion for Summary Judgment, that Aflatouni is entitled to judgment on Aflatouni's trespass to try title claim and the rescission of Aflatouni's Vendor's Lien, placing equitable and legal title in Aflatouni.

## ISSUE THREE

### (Restated)

**The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Aflatouni's Claim to Quiet Title and Remove Cloud on Title. (CR921; App.64)**

**ARGUMENT AND AUTHORITIES FOR ISSUE THREE**

**A.     Applicable Law – Quiet Title and Remove Cloud on Title.**

Courts have used the term "suit to quiet title" to refer to legal disputes regarding (1) title to and possession of real property; and (2) the validity of other "clouds" on an undisputed owner's title to real property. *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 855-56 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (suit to adjudicate ownership of property to determine whether creditors of original owner retained interest in property purportedly conveyed to new owner was action "to quiet

31

title"); *Southwest Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 956-57 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (undisputed property owner's action to invalidate lien and deed of trust securing lien constituted suit "to quiet title").

A suit to quiet title is equitable in nature, and the principal issue in such suits is "'the existence of a cloud on the title that equity will remove.'" *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex. App.—Austin 2006, pet. denied) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)). A "cloud" on legal title includes any deed, contract, judgment lien or other instrument, not void on its face, that purports to convey an interest in or makes any charge upon the land of the true owner, the invalidity of which would require proof. *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). A suit to quiet title "'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Florey*, 212 S.W.3d at 448 (quoting *Thomson v. Locke*, 66 Tex. 383, 1 S.W.112, 115 (Tex. 1886)).

Any deed, contract, judgment, or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner. *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). To prevail in a suit to quiet title, the plaintiff must prove (1) his right, title, or

ownership in real property, (2) that the defendant has asserted a "cloud" on his property, meaning an outstanding claim or encumbrance valid on its face that, if it were valid, would affect or impair the property owner's title, and (3) that the defendant's claim or encumbrance is invalid. *See Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Hahn*, 321 S.W.3d at 531.

## B. Aflatouni's Summary Judgment Evidence Establishes Every Element of Aflatouni's Title Claims.

### 1. Aflatouni Has Right, Title, or Ownership in the Property.

As discussed above, a Special Warranty Deed (Vendor's Lien) (the "Deed") was received by Grapevine Diamond when it purchased the Property. (CR66, App.1; CR71, App.6 - 2007 Deed) The Deed states the Vendor retained a Vendor's Lien when the Property was sold to Grapevine Diamond. (CR66, App.1; CR71, 74, App.6, 9 - 2007 Deed) The Vendor's Lien and superior title was retained by the Vendor until the City Bank debt and the Second Lien Note were paid by Grapevine Diamond. (CR66, App.1; CR74, App.9 - 2007 Deed) The Vendor's Lien was subordinated to City Bank's debt until the City Bank debt was paid by Grapevine Diamond. (CR66, App.1; CR74, App.9 - 2007 Deed) In summary, Aflatouni has right, title, or ownership in the Property.

**2.     City Bank's Corrected Foreclosure Deed, the Special Warranty Deed to SPK and the Warranty Deed to Enclave Are a Cloud on the Title.**

City Bank filed a Corrected Foreclosure Deed claiming title in the Property in the real estate records of Tarrant County, Texas. (CR91, App.26 - Correction Foreclosure Sale Deed) Subsequently, a Special Warranty Deed executed by City Bank to SPK Land Acquisition, LLC was filed in the public records (CR102 - Special Warranty Deed to SPK) and a Warranty Deed executed by SPK Land Acquisition, LLC to Enclave LLC was filed in the public records. (CR112 - Warranty Deed by SPK to Enclave)

These deeds are a cloud on the title, as Enclave is claiming it has title to the Property, and that Aflatouni's lien is no longer enforceable following the foreclosure sale.

**3.     Enclave's Claim is Invalid Because the Foreclosure Sale Violated the Automatic Bankruptcy Stay, and Thus the Foreclosure Sale is Void, in Whole or in Part.**

As discussed above, the foreclosure sale was invalid because it was a violation of the automatic bankruptcy stay resulting from Aflatouni's bankruptcy filing. The authorities, argument and summary judgment evidence discussed above is incorporated as if set forth in its entirety. City Bank's Corrected Foreclosure Deed is a "false statement" because the foreclosure sale was invalid. The undisputed evidence establishes that after Aflatouni filed his bankruptcy petition and before the Aflatouni

bankruptcy proceeding was dismissed, City Bank posted the Property for foreclosure and City Bank's substitute trustee conducted a foreclosure sale.

On December 6, 2010, Jonathan Aflatouni filed Aflatouni Bankruptcy Petition under chapter 13, in cause no. 10-38538-sgj13. (CR67, App.2; CR79, App.14 - Aflatouni Bankruptcy Petition)

On or about December 9, 2010, in violation of the automatic bankruptcy stay, City Bank filed the Foreclosure Notice for a January 4, 2011 sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. (CR67, App.67; CR87, App22 - Foreclosure Notice)

On or about January 4, 2011, in violation of the automatic bankruptcy stay, a substitute trustee appointed by City Bank conducted a foreclosure sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. (CR67, App3; CR91, App.26 - Correction Foreclosure Sale Deed) City Bank recorded its Correction Foreclosure Deed in the real property records of Tarrant County, Texas on or about January 12, 2011. (CR91, App.26 - Correction Foreclosure Sale Deed)

On January 14, 2011, the Bankruptcy Dismissal Order was entered in the Aflatouni Bankruptcy. (CR68, App.3; CR98; App.33 - Order Dismissing Chapter 13 Case and Notice of Dismissal)

City Bank's designee, Wilcox, admitted that City Bank knew that Aflatouni field for bankruptcy protection on December 6, 2011 around the time the bankruptcy petition was filed. (CR163) Jonathan Aflatouni attended the foreclosure sale on January 4, 2011. (CR68; App.3) Before the sale began, Jonathan Aflatouni informed the substitute trustee conducting the foreclosure sale of the Property, and also the City Bank employee that was present at the sale, that Jonathan Aflatouni had filed for bankruptcy protection. (CR68; App.3)

Clearly Enclave's title claim is dependent upon the validity of the foreclosure sale, and Aflatouni's title claim, as the holder of Aflatouni's Vendor's Lien and legal title, is superior to Enclave's title if the foreclosure was void, in whole or in part, as argued above. *See Rogers*, 884 S.W.2d at 768. Aflatouni's Vendor's Lien and legal title would only be extinguished by a valid foreclosure sale. *See Diversified Mortg. Investors*, 576 S.W.2d at 808.

In conclusion, Aflatouni established his title claims as a matter of law, and contrary to Enclave's argument in Enclave's Motion for Summary Judgment.

## ISSUE FOUR

### (Restated)

**The Trial Court Erred When It Granted Summary Judgment in Favor of Enclave on Enclave's Collateral Estoppel Defense Because the Court of Appeals Opinion Never Reached the Issue of Whether City Bank's Foreclosure Sale Was Void Because the Foreclosure Violated the Automatic Bankruptcy Stay, and Aflatouni Demanded Payment of His Loan After the Collin County Judgment Was Entered and the Dallas Court of Appeals Issued Its Opinion. (CR921; App.64)**

### ARGUMENT AND AUTHORITIES FOR ISSUE FOUR

Enclave's motion for summary judgment contains one argument – Enclave asserts that Aflatouni has not title because the foreclosure sale was not void – and thus Enclave asserts that collateral estoppel bars Aflatouni's claims. (CR205-07) Notably, Aflatouni did not demand payment upon the debt that is secured by the Vendors' Lien until March of 2017 (and long after the Court of Appeals Opinion relied upon by Enclave). Further, the Opinion relied upon by Enclave does not contain a holding on whether the foreclosure sale was void or if Aflatouni's Vendor's Lien was canceled by the foreclosure – the Opinion instead merely held that Aflatouni was not entitled to recover damages. (CR229--31; App.46-48)

### A. Applicable Law – Collateral Estoppel.

To invoke collateral estoppel, a party must establish: (1) the same facts sought to be litigated in the second suit were fully litigated in the first suit; (2) those facts were essential to the judgment in the first suit; and (3) the parties were cast as adversaries in

the first suit. *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). The prior decision has preclusive effect only if the issue decided is identical to the issue in the pending litigation and essential to the judgment in the prior action. *Getty Oil Co. v. Ins. Co. of N. America*, 845 S.W.2d 794, 802 (Tex. 1992). Stated differently, a prior judgment is not conclusive of matters "not then directly in issue, or which were only collateral issues, or matters of inference arising in the course of the proceedings." *Ellerd v. Ellison*, 165 S.W. 876, 882 (Tex. Civ. App.—Amarillo 1914) (cit. omitted).

A judgment can be conclusive solely of matters that exist at the time the judgment is rendered, and it cannot be conclusive of issues that have arisen after the judgment was rendered. *Lubbock v. Stubbs*, 160 Tex, 111, ___, 327 S.W.2d 411, 415 (1959). "Res judicata or estoppel by judgment does not apply in suits in trespass to try title to any title that might be acquired by either party subsequent to the rendition of the judgment plead as res judicata or estoppel." *McCombs v. McKaughan*, 195 S.W.2dd 194, 200 (Tex. Civ. App.—Beaumont 1946, writ ref'd)(cit. omitted).

**B.      The Court of Appeals Never Held the Foreclosure Sale Was Valid.**

The Opinion relied upon by Enclave contains no holding regarding the voidness or validity of the foreclosure sale. (CR220, App.37 – Opinion)  Instead, the Court of Appeals held that there was "no equity in the property" (CR230, App.47 – Opinion) and that "no summary judgment evidence that the property's value exceeded the amount stated on Grapevine Diamond's bankruptcy schedules, and the property was

sold for less than the amount of City Bank's secured claim" (CR231, App.48 – Opinion)  As a result, the Court of Appeals overruled the "portions . . . of the issues alleging that summary judgment for City Bank was improper because the foreclosure sale allegedly violated the stay in Aflatouni's bankruptcy." (CR231, App.48 – Opinion)

Notably, the Opinion does refer to the bankruptcy court's consideration of whether an intercreditor agreement sufficiently diluted or weakened the creditor's property rights to the point that there was no meaningful property interest. (CR230-31, App.47-48 – Opinion)   Of course, the bankruptcy court would not have made this analysis if Aflatouni's Vendor's Lien and legal title - an asset - was not property of the bankruptcy estate and thus the subject of the automatic bankruptcy stay.

As a result, Enclave's motion for summary judgment grounds, including Enclave's collateral estoppel argument, fail because the "issue presented in the current litigation is not identical to the issue in the pending litigation." *See Getty Oil Co. v. Ins. Co. of N. America*, 845 S.W.2d at 802.

**C.    Res Judicata, If It Had Been Pleaded By Enclave, Is Inapplicable - Aflatouni Demanded Payment in March of 2017 – Long After the Previous Litigation Concluded.**

A holder of a vendor's lien possesses superior title and has the right to rescind the vendor's lien upon a default by the vendee. *Whiteside*, 347 S.W.2d at 570.  A cause of action based upon a note that is payable upon demand accrues when demand

is made. *Aguero v. Ramirez*, 70 S.W.3d 372, 375 (Tex. App.—Corpus Christi 2002, pet. denied); *see also Arlington v. McClure*, No. 02-06-296-CV, 2008 WL 755072, at *6 (Tex. App.—Fort Worth June 5, 2008, no pet.) (mem. op.). Thus, until Aflatouni demanded payment in March of 2017 (CR120, App.36 – Aflatouni Request for Payment), Aflatouni's right to rescind the Vendors' Lien had not yet accrued.

As part of the closing on September 12, 2007, Grapevine Diamond received a loan from Jonathan Aflatouni in the amount of $2,741,760.51 as reflected on the Settlement Statement as part of the purchase price for the Property. (CR68:App.3) City Bank did not dispute that Aflatouni loaned Grapevine Diamond the $2.7 million when Grapevine Diamond purchased the Property in 2007. (CR162) This loan was to be paid off on demand, which was to be no earlier that when Grapevine Diamond sold the property or developed the property itself. (CR68; App.3) This loan accrued interest at an annual rate of 7.00% simple interest. (CR69; App.4) On July 19, 2013, Youval Zive, in his capacity as President of Danjon, Inc., Grapevine Diamond's general partner, executed a Replacement Promissory Note reflecting the terms of the original promissory note. (CR69, App.4; CR101) This loan has not been repaid, and Aflatouni demanded payment on March 14, 2017. (CR70, App.5; CR120, App.36 – Aflatouni Request for Payment) Aflatouni demanded payment on March 14, 2017.[5]

---

5 Again, because the demand for payment occurred <u>after</u> the final judgment in the Collin County case, Aflatouni's cause of action seeking a rescission of Aflatouni's Vendor's Lien had not yet accrued, and therefore a res judicata defense, if Enclave had pleaded res judicata, is inapplicable.

(CR70, App.5; CR120, App.36 - Demand for Payment)  The purchase money has not been paid. (CR70, App.5)

As a result, Enclave's collateral estoppel argument fails because the same facts sought to be litigated in the second suit were not fully litigated in the first suit; and (2) the same facts were not essential to the judgment in the first suit. *See Sysco Food Servs*, 890 S.W.2d at 801.

**D.      SPK and Enclave - the Subsequent Owners After City Bank - Were Not Parties to the Collin County Lawsuit.**

On September 29, 2011, City Bank executed the Special Warranty Deed to SPK Land Acquisition, LLC (CR102 - Special Warranty Deed to SPK).  On October 5, 2012, SPK executed a Warranty Deed to Enclave (CR112 - Warranty Deed by SPK to Enclave). SPK and Enclave are not parties to the Dallas appeal. (CR220; App.37) Aflatouni's Motion for Summary Judgment filed in the Collin County case, the Order granting City Bank's Motion for Summary Judgment and the Final Judgment (these three documents are included as exhibits to Enclave's MSJ Response), shows that SPK and Enclave are not parties to the Collin County case. (CR288, 364, 367)  There is no mention of a claim by Aflatouni to rescind the vendor's lien in these documents.

## PRAYER

Appellant Jonathan Aflatouni asks that this Court reverse the judgment of the trial court that Aflatouni take nothing by his claims, render judgment in favor of

Aflatouni on his claims, or, in the alternative, remand this cause for further proceedings.

Respectfully submitted,

PALMER & MANUEL, L.L.P.


By: /s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg
State Bar No. 00790051
jsandberg@pamlaw.com
8350 N. Central Expressway; Suite 1111
Dallas, Texas 75206
(214) 242-6444/ (214) 265-1950 – Fax
**COUNSEL FOR   APPELLANT JONATHAN AFLATOUNI**

## CERTIFICATE OF COMPLIANCE

Appellants file this Tex. R. App. P. 9.4 Certificate of Compliance regarding the Appellants' Brief filed on this date.

I, Jeffrey R. Sandberg, Esq., counsel for Appellants, certifies that Appellant's Brief was generated by a computer using Microsoft Word 2007 which indicates that after excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, as permitted under Rule 9.4(i)(1) of the Texas Rules of Civil Procedure, the word count of this document is 8,635.

/s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument was served by certified mail, return receipt requested, on this 20th day of December, 2017, upon:

**Via E-Filing and E-Mail:**
Margaret "Peg" Donahue Hall
Email: peg.hall@dentons.com
Leanna M. Anderson
Email: leanna.anderson@dentons.com
Spencer D. Hamilton
Email: spencer.hamilton@dentons.com
DENTONS US LLP
2000 McKinney Avenue, Suite 1900
Dallas, TX 75201

**Via E-Mail (ziv@pacificholdingsgroup.com):**
Grapevine Diamond, L.P., c/o its General Partner, Danjon, Inc.
Youval Zive, President of Danjon, Inc.

/s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg

# APPENDIX

**Pg. #**  **Description**

1    CR66: Affidavit of J. Aflatouni

6    CR71: 2007 Special Warranty Deed (Vendor's Lien)

13    CR78: City Bank Letter (Sept.11, 2007)

14    CR79: Aflatouni Bankruptcy Petition (Dec. 6, 2010)

22    CR87: City Bank Notice of Trustee (Foreclosure) Sale (Dec. 10, 2010)

26    CR91: Correction Foreclosure Sale Deed (effective Jan. 4, 2011)

28    CR93: Foreclosure Sale Deed (Jan. 4, 2011)

33    CR98: Order Dismissing Aflatouni Bankruptcy (Jan. 12, 2011

36    CR120: Aflatouni Request for Payment to Grapevine Diamond (March 14, 2017)

37    CR220 - Opinion By Dallas Court of Appeals (Dec. 7, 2015)

62    CR915: Order Granting Enclave Motion for Partial Summary Judgment (May 26, 2017)

64    CR921: Final Judgment (Sept. 27, 2017)

68    *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499 (Tex. 1988).

| | | |
|---|---|---|
| GRAPEVINE DIAMOND, L.P. and | § | IN THE DISTRICT COURT OF |
| AMIR FOAD JOHN AFLATOUNI, | § | |
| aka JONATHAN AFLATOUNI, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| ENCLAVE AT GRAPEVINE, L.P., | § | |
| A TEXAS LIMITED PARTNERSHIP, | § | |
| Defendant. | § | 342ND JUDICIAL DISTRICT |

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF _____ | § | |

### AFFIDAVIT OF JONATHAN AFLATOUNI

BEFORE ME, the undersigned Notary Public, on this day personally appeared Jonathan Aflatouni who, being duly sworn on his oath, deposed and said the following:

1. "My name is Jonathan Aflatouni. I am over the age of twenty-one (21) years, have never been convicted of a felony or a crime involving moral turpitude, and am fully competent to testify in all respects. I have personal knowledge of all facts set forth herein and they are all true and correct.

2. When Grapevine Diamond, L.P. purchased the property in 2007, it received a Warranty Deed with Vendor's Lien (the "2007 Deed") reflecting the retention of a vendor's lien by the Vendors. Further, the 2007 Deed reflects the Vendors' Lien would be in effect until City Bank and the Vendors were repaid, was retained in favor of the Vendors and City Bank, and partially assigned to City Bank so that the Vendors would be subordinated to City Bank until City Bank was repaid. Thus, City Bank had actual

Affidavit of Jonathan Aflatouni
I:\14223\Pleadings\Affidavit Aflatouni.170403..doc                              Page 1 of 5
EXHIBIT A
**Appendix to Appellant's Brief - Page 1 of 69**
66

knowledge of the property interest held by the Vendors in the form of the portion of second-priority Vendors' Lien that was not assigned to City Bank. A true and correct copy of the 2007 Deed is attached to this Affidavit as **Exhibit A-1**.

3. Further, I and Grapevine Diamond communicated to City Bank, before the real property was sold to Grapevine Diamond, that Grapevine Diamond would be providing additional consideration to me of $2,740,700.51 at the time of the closing. In response, City Bank confirmed in writing that City Bank knew I would be entitled to receive $2,740,700.51 of sales proceeds at the time of the closing. A true and correct copy of City Bank's September 12, 2007 letter to the title office is attached to this Affidavit as **Exhibit A-2**.

4. I never exchanged the $2,740,700.51 of sales proceeds at the time of the closing that was owed to me for equity in Grapevine Diamond.

5. On December 6, 2010, Aflatouni filed an Original Petition in the Bankruptcy Court of the Northern District of Texas under chapter 13, in cause no. 10-38538-sgj13 (the "Bankruptcy Petition"). A true and correct copy of the Bankruptcy Petition is attached to this Affidavit as **Exhibit A-3**.

6. On or about December 9, 2010, in violation of the automatic bankruptcy stay, City Bank filed its Notice of Foreclosure Sale for a January 4, 2011 sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. A true and correct copy of the City Bank Notice of Foreclosure Sale is attached to this Affidavit as **Exhibit A-4**.

Affidavit of Jonathan Aflatouni
I:\14223\Pleadings\Affidavit Aflatouni.170403..doc                                    Page 2 of 5
EXHIBIT A
**Appendix to Appellant's Brief - Page 2 of 69**                              67

7. On or about January 4, 2011, in violation of the automatic bankruptcy stay, a substitute trustee appointed by City Bank conducted a foreclosure sale of the property owned by Grapevine Diamond, L.P. and the subject of Aflatouni's second-priority vendor's lien. The 2011 foreclosure sale sought to eliminate Aflatouni's property interest as a second-priority lienholder regarding Grapevine Diamond, L.P.'s real property. A true and correct copy of the Correction Foreclosure Sale Deed describing City Bank's January 2011 foreclosure sale of is attached to this Affidavit as **Exhibit A-5**.

8. I attended the foreclosure sale on January 4, 2011. Before the sale began, I informed City Bank's trustee/substitute trustee conducting the foreclosure sale of the Property, and also the City Bank employee that was present at the sale, that I had filed for bankruptcy protection. The trustee/substitute trustee and the City Bank employee told me that my filing for bankruptcy protection was unimportant.

9. Following City Bank's issuance of the Notice of Foreclosure Sale and the January 4, 2011 foreclosure sale, my bankruptcy proceeding was dismissed on January 12, 2011. A true and correct copy of the Order Dismissing Chapter 13 Case and Notice of Dismissal is attached to this Affidavit as **Exhibit A-6**.

10. As part of the closing on September 12, 2007, Grapevine Diamond executed a promissory note (the "Note") when Grapevine Diamond received a loan from Jonathan Aflatouni in the amount of $2,741,760.51 as reflected on the Settlement Statement as part of the purchase price for the Property. This loan was to be paid off on demand, which was to be no earlier that when Grapevine Diamond sold the property or developed the property itself.

11. As of the date hereof, I am the sole owner of the loan evidenced by the Note. I have not assigned, pledged, sold, endorsed or in any way transferred or hypothecated the Note or

**Affidavit of Jonathan Aflatouni**
I:\14223\Pleadings\Affidavit Aflatouni.170403..doc                                    Page 3 of 5
EXHIBIT A
**Appendix to Appellant's Brief - Page 3 of 69**                                    68

any interest therein. The original Note was duly executed and delivered by Grapevine Diamond to me on or about the date of the closing on September 12, 2007, but the original Note has been inadvertently lost or misplaced by me, and I have been unable to locate the original Note despite diligent efforts to do so. I cannot reasonably obtain possession of the original Note because the whereabouts of the original Note cannot be determined. I would have been entitled to enforce the Note when loss of possession occurred. The loan from me to Grapevine Diamond was due on demand, which was to be no earlier than when Grapevine Diamond sells the Property or develops the Property itself. The original note stated that Grapevine Diamond promised to pay to the order of Jonathan Aflatouni, the sum of $2,741,760.51, together with simple interest at the rate of 7.0% percent per annum on the principal commencing on September 12, 2007, payable: (1) in full should Grapevine Diamond, L.P. sell the Property; or (2) monthly payments in the amount of $35,000.00 on the 15th day of each month, beginning no less than 30 days following the date of demand with the balance due upon the sale of the Property, at Grapevine, Texas.

12. On July 19, 2013, Youval Zive, in his capacity as President of Danjon, Inc., Grapevine Diamond's general partner, executed a Replacement Promissory Note reflecting the terms of the original promissory note. A true and correct copy of the Replacement Promissory Note is attached to this Affidavit as **Exhibit A-7**.

13. On or about September 29, 2011, City Bank executed and delivered a Special Warranty Deed regarding Grapevine Diamond's real property in favor of SPK Land Acquisition, LLC. ("SPK"). A true and correct copy of this deed attached to this Affidavit as **Exhibit A-8**.

14. On or about October 5, 2012, SPK executed a Warranty Deed regarding Grapevine Diamond's real property that is the subject of Aflatouni's Vendors' Lien in

Affidavit of Jonathan Aflatouni
I:\14223\Pleadings\Affidavit Aflatouni.170403..doc                              Page 4 of 5
EXHIBIT A
Appendix to Appellant's Brief - Page 4 of 69                    69

favor of Defendant Enclave. A true and correct copy of this deed is attached to this Affidavit as **Exhibit A-9**.

15.     The loan to Grapevine Diamond that is the subject of the Vendors Lien accrued interest at an annual rate of 7.00% simple interest. This loan has not been repaid and no demand for payment was made regarding this loan until I made a demand for payment on March 14, 2017. A true and correct copy of the demand for payment is attached to this Affidavit as **Exhibit A-10**. Grapevine Diamond has failed to make the required payment of this loan, which is now due and outstanding.

FURTHER AFFIANT SAYETH NAUGHT.

JONATHAN AFLATOUNI

SUBSCRIBED AND SWORN to before me on this 3rd day of April, 2017, witness my hand and official seal.

_____
NOTARY PUBLIC in and for the
State of Texas

LINDA JOYCE PALMER
Notary Public, State of Texas
Comm. Expires 05-09-2017
Notary ID 12529297-6

**Electronically Recorded**
Official Public Records

*Suzanne Henderson*

Suzanne Henderson

Tarrant County Texas

2007 Sep 26 09:28 AM
Fee: $ 40.00
Submitter: ACS INC

**D207343375**

7   Pages

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

WT07 - 334834                                                Recording Fee $ 40-

Vendee's Address is and
After Recording, Return To:
Grapevine Diamond, L.P., a Texas limited partnership
13733 Omega Road
Dallas, Texas 75244

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | **Special Warranty Deed** |
| COUNTY OF TARRANT | § | (Vendor's Lien) |

**Definitions**

The following terms shall have the meanings indicated, wherever these terms are used in this instrument.

Date Hereof.        The effective date of this instrument, which shall be September 10, 2007

Vendor:             Jonathon Aflatouni and wife, Razia S. Aflatouni

Vendee:             Grapevine Diamond, L.P., a Texas limited partnership
                    13733 Omega Road
                    Dallas, Texas 75244

Lender:             City Bank Texas
                    Attention: Angela W. Carona
                    7800 Preston Road, Suite 201
                    Plano, Texas 75024
                    (972) 491-1300; fax (972) 491-1477

Trustee             Mike Liner

Note Date:          September 10, 2007

Note Amount:        $6,375,000 00

Note Maker          Vendee

Note.               That certain Promissory Note in the original principal sum of the Note
                    Amount, dated as of the Note Date, executed by Note Maker, payable to the
                    order of Lender.

city bank 1\188xwd2
Special Warranty Deed - Page 1

EXHIBIT F-2

| Deed of Trust: | That certain Deed of Trust, Security Agreement and Assignment of Rents, Leases, Incomes and Agreements dated as of the Note Date, securing the Note, executed by Note Maker to Trustee for the benefit of Lender, covering the Property. |
|---|---|
| Property (including any improvements). | **The real property situated in the City of Grapevine, Tarrant County, Texas, and being more particularly described on Exhibit "A" attached hereto and made a part hereof** |
| Exceptions: | The exceptions from the coverage of Vendor's warranties of title set forth in this instrument which are as follows: |

(1) Ad valorem taxes for the year 2007 and subsequent years not yet due and payable.

(2) Right-of-way easement granted to Texas Power & Light Company, recorded in Volume 8628, Page 2381, of the Deed Records of Tarrant County, Texas; as affected by Volume 10062, Page 2147, Deed Records, Tarrant County, Texas.

(3) Easement for right-of-way granted to Texas Power & Light Company of Dallas, Texas, recorded in Volume 8628, Page 2393, Deed Records of Tarrant County, Texas; as affected by Bill of Sale Assignments and Conveyance, dated June 25, 1990, recorded in Volume 10062, Page 2147, Deed Records of Tarrant County, Texas.

(4) Easement for right-of-way granted to Texas Power & Light Company of Dallas, Texas, recorded in Volume 8628, Page 2399, Deed Records of Tarrant County, Texas; as affected by Bill of Sale Assignments and Conveyance, dated June 25, 1990, recorded in Volume 10062, Page 2147, Deed Records of Tarrant County, Texas.

(5) Right-of-Way easement, executed by William D Ihnfeldt and wife, Peggy Jo Ihnfeldt; Ronald Warrick and wife, Maxine S. Warrick to Texas Power & Light Company, dated July 2, 1986, filed July 28, 1986, recorded in Volume 8628, Page 2375, of the Deed Records of Tarrant County, Texas.

(6) Right-of-way easement, executed by William D Ihnfeldt and wife, Peggy Jo Ihnfeldt to Texas Power & Light Company, dated July 2, 1986, filed July 28, 1986, recorded in Volume 8629, Page 1, of the Deed Records of Tarrant County, Texas; as noted on survey dated August 15, 2006 and prepared by Charles G. Starnes, R.P.L.S. No. 2468.

city bank 1\188xwd2
Special Warranty Deed - Page 2

(7) Right-of-way easement, executed by William D. Ihnfeldt, Peggy Ihnfeldt and Marsha Lynne Ihnfeldt Coker to Texas Power & Light Company, dated July 2, 1986, filed July 28, 1986, recorded in Volume 8628, Page 2387, of the Deed Records of Tarrant County, Texas; as noted on survey dated August 15, 2006 and prepared by Charles G Starnes, R P.L.S. No. 2468.

(8) The following item(s) affecting the subject property, as shown on survey dated August 15, 2006 and prepared by Charles G. Starnes, R.P.L.S. No. 2468·

That portion of subject property lying within Anderson-Gibson Road.

Rights or claims, if any, of adjoining property owner(s) in and to that portion of insured property lying between the fence and the South and West property line(s).

Consideration. All of the following consideration, the receipt and sufficiency of which are hereby acknowledged and confessed:

(1) Ten Dollars ($10.00) cash in hand paid by Vendee to Vendor.

(2) The execution and delivery by Vendee of the Note, secured by the Deed of Trust, which Note and Deed of Trust is additionally secured by the Vendor's Lien ("Vendor's Lien") herein retained.

### Grant

For and in consideration of the Consideration, Vendor has granted, bargained, sold and conveyed, and does by these presents hereby grant, bargain, sell and convey the Property to Vendee, subject only to the Exceptions Vendor warrants, covenants and represents to Vendee that the Property does not constitute any part of theirs or their respective spouses' business or residential homestead and that the joinder of Vendor's respective spouses is not required to effect the conveyance of the Property herein to Vendee, each person comprising Vendor having complete authority to make this conveyance.

### Habendum et Tenendum

To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Vendee, and unto Vendee's successors and assigns forever; and Vendor does hereby bind Vendor's heirs, successors and assigns to warrant and forever defend all and singular the said premises unto the said Vendee, and unto Vendee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof; by, through or under Vendor, but not otherwise, subject however, to the Exceptions

### Vendor's Lien

city bank 1\188xwd2
**Special Warranty Deed - Page 3**

But it is expressly agreed that the Vendor's Lien, as well as the superior title in and to the above-described premises, is retained against the Property, premises and improvements until the Note and Second Lien Note and all interest thereon are fully paid according to the face, tenor, effect, and reading thereof, when this Deed shall become absolute, said Vendor's Lien being retained in favor of Lender and Vendor, as if same had been retained by Vendor and assigned by proper assignment unto Lender, without recourse upon Vendor, Lender being thus fully subrogated to same. The portion of the Vendor's Lien securing Vendor shall be subordinated in all respects to the portion of the Vendor's Lien securing Lender.

### Execution and Effective Date

This instrument is effective as of the Date Hereof. This instrument was executed on the date or dates of the acknowledgment or respective acknowledgments set forth below.

Vendor:

_____
Jonathon Aflatouni

_____
Razia S. Aflatouni

THE STATE OF TEXAS §
§
COUNTY OF _Tarrant_ §

Before me _Rose Mary Kendrick_ (Notary printed name) on this day personally appeared Jonathon Aflatouni, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _12th_ day of _September_ 2007.

ROSE MARY KENDRICK
Notary Public, State of Texas
My Commission Expires
June 05, 2008

_____
Notary Public, State of Texas

city bank 1\188xwd2
Special Warranty Deed - Page 4

THE STATE OF TEXAS §
§
COUNTY OF _Tarrant_ §

Before me _Rose Mary Kendrick_ (Notary printed name) on this day personally appeared Razia S. Aflatouni, known to me or proved to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _12th_ day of _September_ 2007.

_Rose Mary Kendrick_
Notary Public, State of Texas

ROSE MARY KENDRICK
Notary Public, State of Texas
My Commission Expires
June 05, 2008

city bank 1\188xwd2
Special Warranty Deed - Page 5

## EXHIBIT "A"

Being a tract of land situated in the H. Suggs Survey, Abstract Number 1415 in the City of Grapevine, Tarrant County, Texas. Said tract is also an assemblage of six individual tracts as shown herein and in total described more particularly as follows:

BEGINNING at the U.S. Army Corps of Engineers monument atop a square concrete post located at the most easterly southeast corner of a 37.59 acre tract of land described as Tract No. A-3A in a Declaration of Taking by the U.S. Army Corps of Engineers and being a part of the same land conveyed to Mrs. Birdie Elizabeth Brown by Mrs. Lola Buckaloo by deed dated 7 December 1934 and recorded in Volume 1238 at Page 373 of the Deed Records of Tarrant County, Texas. Said brass monument also being at the southwest corner of a 0.23 acre tract acquired by agreement from the U.S. Army Corps of Engineers.

THENCE North 01 degrees 29 minutes 58 seconds East along the east line of the U.S. Army Corps of Engineers tract and the west line of the above said 0.23 acre agreement tract a distance of 642.56 feet to a 1/2 inch iron rod found with cap stamped SCI 2466. Said point also being the northwest corner of a 0.99 acre parcel of land described in a deed to W.D. Ihnfeldt recorded in Volume 3897, Page 165 of the Deed Records and also being the southeast corner of a 108.72 acre parcel of land described in a deed to H/A Grapevine Joint Venture recorded in Volume 13225, Page 505 of the Deed Records of Tarrant County, Texas.

THENCE North 89 degrees 56 minutes 30 seconds East along the north line of said Ihnfeldt parcel a distance of 378.84 feet to a 1/2 inch iron rod set with cap stamped SCI 2466, passing the northeast corner of the Ihnfeldt parcel at 340.87 feet. Said corner being in the west line of a City of Grapevine, Texas State Right of Way Deed recorded in Volume 12747, Page 496 of the Deed Records of Tarrant County, Texas.

THENCE in a southerly direction along the west line of the said Street Right of Way Deed the following:

South 00 degrees 05 minutes 18 seconds East a distance of 723.29 feet to a PK nail found.

South 90 degrees 00 minutes 00 seconds East a distance of 17.99 feet to a 1/2 inch iron rod found.

South 02 degrees 06 minutes 36 seconds East a distance of 437.52 feet to a 1/2 inch iron rod set with a cap stamped SCI 2466.

South 16 degrees 21 minutes 26 seconds West a distance of 153.07 feet to a 1/2 inch iron rod set with a cap stamped SUR-TEX 2466.

THENCE North 69 degrees 30 minutes 28 seconds West a distance of 39.53 feet to a mag nail with shiner stamped JPH Land Surveying at the most southerly corner of a 3.15 acre parcel of land described in a deed to William D. Ihnfeldt and Ronald Warrick recorded in

Volume 5008, Page 257 of the Deed Records of Tarrant County, Texas.

THENCE along the south and west lines of said Ihnfeldt / Warrick parcel and along the north and east lines of a parcel of land described in a deed to Carter Grapevine Partners Document No. D204189024 recorded in the Deed Records of Tarrant County, Texas the following:

North 12 degrees 21 minutes 29 seconds East a distance of 112.30 feet to a 1/2 inch iron rod found with cap stamped JPH land Surveying.

North 71 degrees 23 minutes 12 seconds West a distance of 128.21 feet to a 5/8 inch iron rod found.

South 86 degrees 32 minutes 10 seconds West a distance of 221.12 feet to a 1 inch pipe found.

North 00 degrees 21 minutes 00 seconds East a distance of 373.70 feet to a 1/2 inch iron rod found with cap stamped SUR-TEX 2466 at the northwest corner of the said Ihnfeldt / Warrick tract, said point also being the southwest corner of a parcel of land described in a deed to James Roland Upton and wife Joyce Ann Upton recorded in Volume 6204 Page 786 of the Deed Records of Tarrant County, Texas.

THENCE North 01 degrees 29 minutes 47 seconds West along the west line of the said Upton tract and the east line of the said Carter Grapevine Partners tract a distance of 140.85 feet to a 1/2 inch iron rod found with cap stamped SCI 2466, said point being the northeast corner of the said Carter-Grapevine Partners tract and the southeast corner of the above said 0.23 acre agreement tract.

THENCE South 88 degrees 30 minutes 13 seconds West along the north line of the Carter Grapevine Partners tract and the south line of the above said agreement tract a distance of 31.70 feet to the POINT OF BEGINNING and containing 452.588 square feet or 10.39 acres of land.

NOTE: The Company is prohibited from insuring the area or quantity of the land described herein. Any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for information

*1292*
*722*



**TEXAS**

PLANO OFFICE
7 Soo Preston Road
Suite 101
Plano, Texas 75024
972-491-1300 main
972-491-1477 fax

September 11, 2007

Rose Mary Kendrick
Escrow Officer
Federal Title Inc.
1200 S Main, Ste 1000
Grapevine, TX 76051

Dear Rose Mary:

City Bank Texas is aware that Jonathon Aflatouni will be the one who will be entitled to the $2,740,700.51 of sale proceeds derived from the sale of the 10.39 acre tract of land to Grapevine Diamond, L.P. (although he may elect not to take cash out of this closing for the purchase of the property). City Bank Texas is also aware that Mr. Aflatouni has reached an apparent understanding with the partners of Grapevine Diamond, L.P. that Mr. Aflatouni will reinvest those sale proceeds with Grapevine Diamond, L.P. in exchange for an equity interest in the partnership, at some later date in connection with the subsequent development of the property. It is our understanding Mr. Aflatouni is not currently a partner of Grapevine Diamond, L.P. If this information is not correct, please advise.

City Bank Texas has authorized you to proceed with closing in accordance with the Escrow Instructions previously forwarded to you.

Sincerely,

Paul E. Parkinson
President, Plano Branch

citybankonline.com

EXHIBIT _F-3_

CB002166

B1 (Official Form 1) (4/10)

| UNITED STATES BANKRUPTCY COURT | **VOLUNTARY PETITION** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle): AFLATOUNI  Amir  John | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): Jonathan , Form, Brad | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): 5757 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): 8500 DORAL CT East  Flower Mound  R  ZIP CODE 75022 | Street Address of Joint Debtor (No. and Street, City, and State):  ZIP CODE |
| County of Residence or of the Principal Place of Business: DENTON | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): P.O. Box 967  Colleyville  TX  ZIP CODE 76034 | Mailing Address of Joint Debtor (if different from street address):  ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):  ZIP CODE | |

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7      ☐ Chapter 15 Petition for<br>☐ Chapter 9          Recognition of a Foreign<br>☐ Chapter 11        Main Proceeding<br>☐ Chapter 12      ☐ Chapter 15 Petition for<br>☑ Chapter 13        Recognition of a Foreign<br>                          Nonmain Proceeding |
| | **Tax-Exempt Entity** (Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts** (Check one box.)<br>☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." ☐ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 *(amount subject to adjustment on 4/01/13 and every three years thereafter).*<br>- - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

EXHIBIT F-4

B1 (Official Form 1) (4/10)                                                                                                    Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐   Exhibit A is attached and made a part of this petition. | X _____<br>   Signature of Attorney for Debtor(s)       (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☐   No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐   Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

**Appendix to Appellant's Brief - Page 15 of 69**

80

B1 (Official Form) 1 (4/10)                                                                                              Page 3

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s): |
|---|---|

**Signatures**

<table>
<tr><th>Signature(s) of Debtor(s) (Individual/Joint)</th><th>Signature of a Foreign Representative</th></tr>
<tr><td>

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Debtor

X _____
   Signature of Joint Debtor
   _469-585-4991_
   Telephone Number (if not represented by attorney)
   _12-5-2010_
   Date

</td><td>

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
   (Signature of Foreign Representative)

   _____
   (Printed Name of Foreign Representative)

   _____
   Date

</td></tr>
<tr><th>Signature of Attorney*</th><th>Signature of Non-Attorney Bankruptcy Petition Preparer</th></tr>
<tr><td>

X _____
   Signature of Attorney for Debtor(s)

   _____
   Printed Name of Attorney for Debtor(s)

   _____
   Firm Name

   _____
   _____
   Address

   _____
   Telephone Number

   _____
   Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

</td><td>

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
_____

</td></tr>
<tr><th>Signature of Debtor (Corporation/Partnership)</th><td></td></tr>
<tr><td>

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Authorized Individual

   _____
   Printed Name of Authorized Individual

   _____
   Title of Authorized Individual

   _____
   Date

</td><td>

Address
X _____

   _____
   Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

</td></tr>
</table>

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

In re ___A,h,~ /lehr__ AHaiouNi_____     Case No._____
　　　　　　Debtor　　　　　　　　　　　　　　　　(if known)

### EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B 1D (Official Form 1, Exh. D) (12/09) – Cont.    Page 2

❑ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.

❑ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]* *[Must be accompanied by a motion for determination by the court.]*

❑ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
❑ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
❑ Active military duty in a military combat zone.

❑ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

I certify under penalty of perjury that the information provided above is true and correct.

Signature of Debtor: *[signature]*

Date: 12-05-2010

**Appendix to Appellant's Brief - Page 18 of 69**    83

B 201A (Form 201A) (12/09)

---

WARNING: Effective December 1, 2009, the 15-day deadline to file schedules and certain other documents under Bankruptcy Rule 1007(c) is shortened to 14 days.  For further information, see note at bottom of page 2

# UNITED STATES BANKRUPTCY COURT

## NOTICE TO CONSUMER DEBTOR(S) UNDER §342(b)
## OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services;  (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition.  Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition.  In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.  If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

### 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator.  The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.  Each debtor in a joint case must complete the briefing.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses.  Each debtor in a joint case must complete the course.

### 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

**Chapter 7:  Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total fee $299)**
Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7.  If your income is greater than the median income for your state of residence and family size, in some cases, the United States trustee (or bankruptcy administrator), the trustee, or creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are

found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

### 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

WARNING: Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court. The documents and the deadlines for filing them are listed on Form B200, which is posted at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

Many filing deadlines change on December 1, 2009. Of special note, 12 rules that set 15 days to act are amended to require action within 14 days, including Rule 1007(c), filing the initial case papers; Rule 3015(b), filing a chapter 13 plan; Rule 8009(a), filing appellate briefs; and Rules 1019, 1020, 2015, 2015.1, 2016, 4001, 4002, 6004, and 6007.

B 201B (Form 201B) (12/09)

# UNITED STATES BANKRUPTCY COURT

In re _Amir John AflaTowi_ _____     Case No. _____
        Debtor

                                           Chapter _____

## CERTIFICATION OF NOTICE TO CONSUMER DEBTOR(S)
## UNDER § 342(b) OF THE BANKRUPTCY CODE

### Certification of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor the attached notice, as required by § 342(b) of the Bankruptcy Code.

_____
Printed name and title, if any, of Bankruptcy Petition Preparer
Address:


X_____

Signature of Bankruptcy Petition Preparer or officer,
principal, responsible person, or partner whose Social
Security number is provided above.

Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person, or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

### Certification of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read the attached notice, as required by § 342(b) of the Bankruptcy Code.

_Amir John AflaTowi_ _____
Printed Name(s) of Debtor(s)

Case No. (if known) _____

X _____
Signature of Debtor                    Date

X _____
Signature of Joint Debtor (if any)     Date

---

**Instructions:** Attach a copy of Form B 201A, Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code.

Use this form to certify that the debtor has received the notice required by 11 U.S.C. § 342(b) only if the certification has NOT been made on the Voluntary Petition, Official Form B1. Exhibit B on page 2 of Form B1 contains a certification by the debtor's attorney that the attorney has given the notice to the debtor. The Declarations made by debtors and bankruptcy petition preparers on page 3 of Form B1 also include this certification.

**Appendix to Appellant's Brief - Page 21 of 69**                86

## NOTICE OF TRUSTEE'S SALE

DATE:           December 10th, 2010

PROMISSORY NOTE #1:  Promissory Note described as:

    Date:                      September 10, 2007

    Maker:                  Grapevine Diamond, L.P.

    Payee:                  City Bank Texas

    Principal Amount:        $6,375,000.00

    Amended by:            That certain Renewal Promissory Note dated as of March 10, 2009 by and between Maker and Payee.

PROMISSORY NOTE #2:  Promissory Note described as:

    Date:                      July 29, 2009

    Maker:                  Grapevine Diamond, L.P.

    Payee:                  City Bank

    Principal Amount:        $150,000.00

DEED OF TRUST:      Deed of Trust, Security Agreement and Assignment of Rents, Leases, Incomes and Agreements described as:

    Date:                      September 10, 2007

    Grantor:              Grapevine Diamond, L.P.

    Trustee:              Mike Liner

    Beneficiary:          City Bank Texas

    Recording Information:    Recorded under County Clerk's File No. 207343376 in the Official Public Records of Tarrant County, Texas.

    Amended by:            That certain Loan Modification Agreement dated as of September 10, 2008 by and between Grantor and Beneficiary, and recorded under County Clerk's File No. D208397416 in the Official Public Records of Tarrant County, Texas; that certain Modification of Real

Notice of Trustee's Sale – Page 1

EXHIBIT F-5

**Appendix to Appellant's Brief - Page 22 of 69**

87

Estate Note and Lien dated February 10, 2009 by and between Grantor and Beneficiary, and recorded under County Clerk's File No. D209060794 in the Official Public Records of Tarrant County, Texas, and; that certain Loan Modification Agreement dated as of March 10, 2009 by and between Grantor and Beneficiary and recorded under County Clerks File No. D209246789 in the Official Public Records of Tarrant County, Texas.

LENDER:                  City Bank Texas

PROPERTY:                See Exhibit A attached.

SUBSTITUTE TRUSTEE:                          M. Andrew Stewart or Michael Hicks
    Substitute Trustee's Mailing Address:    1500 Broadway, Suite 700
                                             Lubbock, Texas 79401

or

SUBSTITUTE TRUSTEE:                          Chad Farrar, Brett Stecklein, Ryan Moshell
    Substitute Trustee's Mailing Address:    2911 Turtle Creek Blvd, Suite 880
                                             Dallas, Texas 75219

DATE AND TIME OF TRUSTEE'S SALE OF PROPERTY:

January 4, 2011, being the first Tuesday of the month, to commence at 10:00 AM, or within three hours thereafter.

PLACE OF TRUSTEE'S SALE OF PROPERTY:

The base of the courthouse steps on the east side of the building located at 100 West Weatherford Street in downtown Fort Worth, Tarrant County, Texas.

Default has occurred in the payment of the Promissory Notes and in the performance of the obligations of the Deed of Trust, which secures the Promissory Notes. Because of such default, Lender, the holder of the Promissory Notes and the Deed of Trust, has requested the Substitute Trustee to sell the Property in accordance with the terms of the Deed of Trust and applicable law.

Additionally, this posting of this Notice of Foreclosure Sale is being done pursuant to the terms of an Order on City Bank's Motion for Relief from Automatic Stay which was entered November 22, 2010 by the Bankruptcy Court in the Maker's bankruptcy case known as Case No. 10-32368-BJH; In Re: Grapevine Diamond, L.P., Debtor; In the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. A copy of said Order is attached hereto as Exhibit "B".

Therefore, notice is given that on the Date and Time of Trustee's Sale of Property and at the Place of Trustee's Sale of Property, the Substitute Trustee or such other trustee as Lender

Notice of Trustee's Sale – Page 2

may subsequently appoint, will sell the Property by public sale to the highest bidder for cash, in accordance with the Deed of Trust and applicable law. The sale and conveyance of the Property will be subject to all matters of record applicable to the Property which are superior to the Deed of Trust. Substitute Trustee has not made and will not make any covenants, warranties, or representations concerning the Property other than providing the successful bidder at the sale with a deed to the Property containing any warranties of title required by the Deed of Trust. The Property shall be sold "AS IS, WHERE IS", and WITH ALL FAULTS.

_____
M. Andrew Stewart, Substitute Trustee

## ACKNOWLEDGMENT

STATE OF TEXAS      )
                          )
COUNTY OF LUBBOCK    )

This instrument was acknowledged before me on December 16th 2010, by M. Andrew Stewart, Substitute Trustee.

_____
Notary Public, State of Texas

My Commission Expires:

DAWN MAMAWAL
My Commission Expires
February 22, 2011

Notice of Trustee's Sale — Page 3

Being a tract of land situated in the H. Suggs Survey, Abstract Number 1415 in the City of Grapevine, Tarrant County, Texas. Said tract is also an assemblage of six individual tracts as shown herein and in total described more particularly as follows:

BEGINNING at the U.S. Army Corps of Engineers monument atop a square concrete post located at the most easterly southeast corner of a 37.59 acre tract of land described as Tract No. A-3A in a Declaration of Taking by the U.S. Army Corps of Engineers and being a part of the same land conveyed to Mrs. Birdie Elizabeth Brown by Mrs. Lolu Buckaloo by deed dated 7 December 1934 and recorded in Volume 1238 at Page 373 of the Deed Records of Tarrant County, Texas. Said brass monument also being at the southwest corner of a 0.23 acre tract acquired by agreement from the U.S. Army Corps of Engineers.

THENCE North 01 degrees 29 minutes 58 seconds East along the east line of the U.S. Army Corps of Engineers tract and the west line of the above said 0.23 acre agreement tract a distance of 642.56 feet to a 1/2 inch iron rod found with cap stamped SCI 2466. Said point also being the northwest corner of a 0.99 acre parcel of land described in a deed to W.D. Ihnfeldt recorded in Volume 3897, Page 165 of the Deed Records and also being the southeast corner of a 108.72 acre parcel of land described in a deed to H/A Grapevine Joint Venture recorded in Volume 13225, Page 505 of the Deed Records of Tarrant County, Texas.

THENCE North 89 degrees 56 minutes 30 seconds East along the north line of said Ihnfeldt parcel a distance of 378.84 feet to a 1/2 inch iron rod set with cap stamped SCI 2466, passing the northeast corner of the Ihnfeldt parcel at 340.87 feet. Said corner being in the west line of a City of Grapevine, Texas State Right of Way Deed recorded in Volume 12747, Page 496 of the Deed Records of Tarrant County, Texas.

THENCE in a southerly direction along the west line of the said Street Right of Way Deed the following:

South 00 degrees 05 minutes 18 seconds East a distance of 723.29 feet to a PK nail found.

South 90 degrees 00 minutes 00 seconds East a distance of 17.99 feet to a 1/2 inch iron rod found.

South 02 degrees 06 minutes 36 seconds East a distance of 437.52 feet to a 1/2 inch iron rod set with a cap stamped SCI 2466.

South 16 degrees 21 minutes 26 seconds West a distance of 153.07 feet to a 1/2 inch iron rod set with a cap stamped SUR-TEX 2466.

THENCE North 69 degrees 30 minutes 28 seconds West a distance of 39.53 feet to a mag nail with shiner stamped JPH Land Surveying at the most southerly corner of a 3.15 acre parcel of land described in a deed to William D. Ihnfeldt and Ronald Warrick recorded in Volume 5008, Page 257 of the Deed Records of Tarrant County, Texas.

THENCE along the south and west lines of said Ihnfeldt / Warrick parcel and along the north and east lines of a parcel of land described in a deed to Carter Grapevine Partners Document No. D204189024 recorded in the Deed Records of Tarrant County, Texas the following:

North 12 degrees 21 minutes 29 seconds East a distance of 112.30 feet to a 1/2 inch iron rod found with cap stamped JPH land Surveying.
North 71 degrees 23 minutes 12 seconds West a distance of 128.21 feet to a 5/8 inch iron rod found.
South 86 degrees 32 minutes 10 seconds West a distance of 221.12 feet to a 1 inch pipe found.
North 00 degrees 21 minutes 00 seconds East a distance of 373.70 feet to a 1/2 inch iron rod found with cap stamped SUR-TEX 2466 at the northwest corner of the said Ihnfeldt / Warrick tract, said point also being the southwest corner of a parcel of land described in a deed to James Roland Upton and wife Joyce Ann Upton recorded in Volume 6204 Page 736 of the Deed Records of Tarrant County, Texas.

THENCE North 01 degrees 29 minutes 47 seconds West along the west line of the said Upton tract and the east line of the said Carter Grapevine Partners tract a distance of 140.85 feet to a 1/2 inch iron rod found with cap stamped SCI 2466, said point being the northeast corner of the said Carter Grapevine Partners tract and the southeast corner of the above said 0.23 acre agreement tract.

THENCE South 88 degrees 30 minutes 13 seconds West along the north line of the Carter Grapevine Partners tract and the south line of the above said agreement tract a distance of 31.70 feet to the POINT OF BEGINNING and containing 452.588 square feet or 10.39 acres of land.

EXHIBIT

A

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## CORRECTION FORECLOSURE SALE DEED

**Date:** January 11, 2011 to be effective on January 4, 2011

The following described Foreclosure Sale Deed, which was originally dated January 4, 2011, and filed of record on January 5, 2011, at Clerk's Instrument # D211003133 in the Official Public Records of Tarrant County, Texas (the "Corrected Foreclosure Deed") is hereby corrected by this filing, and this filing is made in substitution of the Corrected Foreclosure Deed, to correct the following: the property description for the "Property" (as such term is defined in the Corrected Foreclosure Deed) was to be more particularly described on an Exhibit "A"; however no Exhibit A was attached to the Corrected Foreclosure Deed. As such, the legal description for the real estate conveyed by the Corrected Foreclosure Deed and defined as the term "Property" thereunder, shall be the property description contained on the Exhibit "A" attached hereto.

I, as Substitute Trustee, for the consideration of correcting the Corrected Foreclosure Deed, and Ten and NO/100s Dollars ($10.00) and other good and valuable consideration, hereby corrects the attached Corrected Foreclosure Deed and by virtue of the authority conferred on me in the Deed of Trust (as such term is defined in the Corrected Foreclosure Deed), have GRANTED, SOLD, and CONVEYED and by these presents do GRANT, SELL, and CONVEY to Buyer (as such term is defined in the Corrected Foreclosure Deed), Buyer's heirs and assigns, all of the Property, described in Exhibit "A" attached hereto, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer, and Buyer's heirs and assigns forever.

I, as Substitute Trustee, do hereby bind Grantor (as such term is defined in the Corrected Foreclosure Deed), and Grantor's heirs and assigns to warrant and forever defend the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

This conveyance relates back to the effective date of the Corrected Foreclosure Deed, and all other terms and conditions of the Corrected Foreclosure Deed, as corrected herein, remain.

This Correction Deed of Trust restates, reaffirms and ratifies in all other respects the Corrected Foreclosure Deed.

<Signature Page to Follow>

-1-

EXECUTED on January 12ᵗʰ, 2011 to be effective as of January 4, 2011.



Ryan Moshell, *Substitute Trustee*

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared Ryan Moshell, as Substitute Trustee, known to me to be the person whose name is subscribed to the foregoing instrument, and who acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

Given under my hand and seal of office on this the 12 day of January, 2011.

RACHEL TILLEY
Notary Public, State of Texas
My Commission Expires
December 27, 2014

Notary Public, State of Texas

AFTER RECORDING, RETURN TO:

MULLIN HOARD & BROWN, LLP
Attn: Michael D. Hicks
P.O. Box 2585
Lubbock, Texas 79408-2585

-2-

After Recording Return to: MULLIN HOARD & BROWN, LLP, Attn: Michael Hicks, P.O. Box 2585, Lubbock, Texas 79408-2585

## FORECLOSURE SALE DEED

FILED
TARRANT COUNTY TEXAS
2011 JAN -5 PM 2: 27

MARY LOUISE GARCIA
COUNTY CLERK

| | |
|---|---|
| **Date:** | January 4, 2011 |
| **Deed of Trust:** | |
| **Date:** | September 10, 2007 |
| **Grantor:** | Grapevine Diamond, L.P. |
| **Original Lender:** | City Bank |
| **Original Beneficiary:** | City Bank |
| **Trustee:** | Mike Liner |
| **Substitute Trustee:** | Ryan Moshell |
| **Recording Information:** | Recorded under County Clerk's File No. 207343376 in the Official Public Records of Tarrant County, Texas |
| **Amended by:** | That certain Loan Modification Agreement dated as of September 10, 2008 by and between Grantor and Beneficiary, and recorded under County Clerk's File No. D208397416 in the Official Public Records of Tarrant County, Texas; that certain Modification of Real Estate Note and Lien dated February 10, 2009 by and between Grantor and Beneficiary, and recorded under County Clerk's File No. D209060794 in the Official Public Records of Tarrant County, Texas, and; that certain Loan Modification Agreement dated as of March 10, 2009 by and between Grantor and Beneficiary and recorded under County Clerks File No. D209246789 in the Official Public Records of Tarrant County, Texas |
| **Property:** | See Attached Exhibit "A" |
| **Note #1:** | |
| **Date:** | September 10, 2007 |
| **Maker:** | Grapevine Diamond, L.P. |
| **Original Principal Amount:** | $6,375,000.00 |
| **Original Payee:** | City Bank |
| **Note #2:** | |
| **Date:** | July 29, 2009 |
| **Maker:** | Grapevine Diamond, L.P. |
| **Original Principal Amount:** | $150,000.00 |
| **Original Payee:** | City Bank |

FORECLOSURE SALE DEED – PAGE 1 OF 3

After Recording Return to: MULLIN HOARD & BROWN, LLP, Attn: Michael Hicks, P.O. Box 2585, Lubbock, Texas 79408-2585

| | |
|---|---|
| **Date of Sale of Property:**<br>(first Tuesday of month) | January 4, 2011 |
| **Time Sale of Property Started:** | 11:45 A.M. |
| **Time Sale of Property Concluded:** | 2:10 P.M. (sale was reconvened to allow cash bidder to produce a cash bid, which was not produced at the reconvened sale) |
| **Place of Sale of Property:** | The base of the courthouse steps on the east side of the building located at 100 West Weatherford Street in downtown Fort Worth, Tarrant County, Texas |
| **Buyer:** | City Bank |
| **Buyer's Mailing Address:**<br>[include county] | 5219 City Bank Parkway<br>Lubbock, Texas 79407<br>Lubbock County, Texas |
| **Amount of Sale:** | Credit Bid of $3,000,000.00 |

By Deed of Trust, Grantor conveyed to Mike Liner, as Trustee, the Property for the purpose of securing and enforcing payment of the indebtedness and obligations therein described (collectively, the "Obligations"), including but not limited to Note #1, all renewals and extensions of Note #1, and any and all present and future indebtedness of Grapevine Diamond, L.P. to Beneficiary, which includes Note #2.

A contingency stated in the Deed of Trust as a condition precedent for the appointment of a substitute trustee occurred, and Ryan Moshell was appointed as a Substitute Trustee by an Appointment of Substitute Trustee executed by City Bank, dated December 9, 2010, and recorded in the Official Public Records of Tarrant County, Texas.

Default has occurred in the payment of the Note when due. City Bank, the current Holder of the Note and the current Beneficiary of the Deed of Trust, requested Ryan Moshell, as Substitute Trustee, to enforce the trust of the Deed of Trust.

On April 5, 2010, the Grantor filed a Chapter 7 bankruptcy petition in the United States District Court for the Northern District of Texas, Dallas Division, in Case No. 10-32368-BJH putting into effect an automatic stay pursuant to 11 U.S.C. §362. However, pursuant to an Order on City Bank's Motion for Relief from Automatic Stay, entered by the Bankruptcy Court on November 22, 2010, the Bankruptcy Court lifted the automatic stay in favor of Beneficiary to proceed with the foreclosure sale described herein.

Pursuant to the requirements of the Deed of Trust and the laws of the state of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the Property was posted at the courthouse of Tarrant County, Texas, the county in which the Property is situated, and a copy of the notice was also filed with the county clerk of Tarrant County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale.

FORECLOSURE SALE DEED – PAGE 2 OF 3

After Recording Return to: MULLIN HOARD & BROWN, LLP, Attn: Michael Hicks, P.O. Box 2585, Lubbock, Texas 79408-2585

Additionally, written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of the current Beneficiary by certified mail on each debtor who, according to the records of the current Beneficiary, is obligated to pay any of the Obligations. The certified-mail notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the current Beneficiary at least twenty-one days preceding the date of the foreclosure.

Written notice of default and of the opportunity to cure the default after maturity of the Note was served on behalf of the current Beneficiary by certified mail on each debtor who, according to the records of the current Beneficiary, is obligated to pay any of the Obligations. The certified-mail notices were timely sent by depositing the notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of the current Beneficiary.

In consideration of the premises and of the highest unconditional bid and payment of the sum of $3,000,000.00, by way of a credit bid against the obligations owed to the Beneficiary, such bid made by Buyer, I, as Substitute Trustee, by virtue of the authority conferred on me in the Deed of Trust, have GRANTED, SOLD, and CONVEYED and by these presents do GRANT, SELL, and CONVEY to Buyer, Buyer's heirs and assigns, all of the Property, to have and to hold the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer and Buyer's heirs and assigns forever.

I, as the Substitute Trustee, do hereby bind Grantor and Grantor's heirs and assigns to warrant and forever defend the Property to Buyer and Buyer's heirs and assigns forever, against the claim or claims of all persons claiming the same or any part thereof.

EXECUTED on January 4, 2011.

_____
Ryan Moshell, *Substitute Trustee*

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared Ryan Moshell, as Substitute Trustee, known to me to be the person whose name is subscribed to the foregoing instrument, and who acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

Given under my hand and seal of office on this the 4th day of January, 2011.

MELINDA LLOYD
Notary Public, State of Texas
My Commission Expires
February 15, 2012

_____
Notary Public, State of Texas

FORECLOSURE SALE DEED – PAGE 3 OF 3

Being a tract of land situated in the H. Suggs Survey, Abstract Number 1415 in the City of Grapevine, Tarrant County, Texas. Said tract is also an assemblage of six individual tracts as shown herein and in total described more particularly as follows:

BEGINNING at the U.S. Army Corps of Engineers monument atop a square concrete post located at the most easterly southeast corner of a 37.59 acre tract of land described as Tract No. A-3A in a Declaration of Taking by the U.S. Army Corps of Engineers and being a part of the same land conveyed to Mrs. Birdie Elizabeth Brown by Mrs. Lola Buckaloo by deed dated 7 December 1934 and recorded in Volume 1238 at Page 373 of the Deed Records of Tarrant County, Texas. Said brass monument also being at the southwest corner of a 0.23 acre tract acquired by agreement from the U.S. Army Corps of Engineers.

THENCE North 01 degrees 29 minutes 58 seconds East along the east line of the U.S. Army Corps of Engineers tract and the west line of the above said 0.23 acre agreement tract a distance of 642.56 feet to a 1/2 inch iron rod found with cap stamped SCI 2466. Said point also being the northwest corner of a 0.99 acre parcel of land described in a deed to W.D. Ihnfeldt recorded in Volume 3897, Page 165 of the Deed Records and also being the southeast corner of a 108.72 acre parcel of land described in a deed to H/A Grapevine Joint Venture recorded in Volume 13225, Page 505 of the Deed Records of Tarrant County, Texas.

THENCE North 89 degrees 56 minutes 30 seconds East along the north line of said Ihnfeldt parcel a distance of 378.84 feet to a 1/2 inch iron rod set with cap stamped SCI 2466, passing the northeast corner of the Ihnfeldt parcel at 340.87 feet. Said corner being in the west line of a City of Grapevine, Texas State Right of Way Deed recorded in Volume 12747, Page 496 of the Deed Records of Tarrant County, Texas.

THENCE in a southerly direction along the west line of the said Street Right of Way Deed the following:

South 00 degrees 05 minutes 18 seconds East a distance of 723.29 feet to a PK nail found.

South 90 degrees 00 minutes 00 seconds East a distance of 17.99 feet to a 1/2 inch iron rod found.

South 02 degrees 06 minutes 36 seconds East a distance of 437.52 feet to a 1/2 inch iron rod set with a cap stamped SCI 2466.

South 16 degrees 21 minutes 26 seconds West a distance of 153.97 feet to a 1/2 inch iron rod set with a cap stamped SUR-TEX 2466.

THENCE North 69 degrees 30 minutes 28 seconds West a distance of 39.53 feet to a mag nail with shiner stamped JPH Land Surveying at the most southerly corner of a 3.15 acre parcel of land described in a deed to William D. Ihnfeldt and Ronald Warrick recorded in Volume 5008, Page 257 of the Deed Records of Tarrant County, Texas.

THENCE along the south and west lines of said Ihnfeldt / Warrick parcel and along the north and east lines of a parcel of land described in a deed to Carter Grapevine Partners Document No. D204189024 recorded in the Deed Records of Tarrant County, Texas the following:

North 12 degrees 21 minutes 29 seconds East a distance of 112.30 feet to a 1/2 inch iron rod found with cap stamped JPH land Surveying.
North 71 degrees 23 minutes 12 seconds West a distance of 128.21 feet to a 5/8 inch iron rod found.
South 86 degrees 32 minutes 10 seconds West a distance of 221.12 feet to a 1 inch pipe found.
North 00 degrees 21 minutes 00 seconds East a distance of 373.70 feet to a 1/2 inch iron rod found with cap stamped SUR-TEX 2466 at the northwest corner of the said Ihnfeldt / Warrick tract, said point also being the southwest corner of a parcel of land described in a deed to James Roland Upton and wife Joyce Ann Upton recorded in Volume 6204 Page 786 of the Deed Records of Tarrant County, Texas.

THENCE North 01 degrees 29 minutes 47 seconds West along the west line of the said Upton tract and the east line of the said Carter Grapevine Partners tract a distance of 140.85 feet to a 1/2 inch iron rod found with cap stamped SCI 2466, said point being the northeast corner of the said Carter Grapevine Partners tract and the southeast corner of the above said 0.23 acre agreement tract.

THENCE South 88 degrees 30 minutes 13 seconds West along the north line of the Carter Grapevine Partners tract and the south line of the above said agreement tract a distance of 31.70 feet to the POINT OF BEGINNING and containing 452.588 square feet or 10.39 acres of land.

EXHIBIT

A

**MARY LOUISE GARCIA**

COUNTY CLERK



100 West Weatherford   Fort Worth, TX  76196-0401

PHONE (817) 884-1195

MULLIN HOARD & BROWN LLP
MICHAEL D HICKS
P O BOX 2585
LUBBOCK, TX 79408

Submitter:   SPECIAL DELIVERY

**_DO NOT DESTROY_**
**_WARNING - THIS IS PART OF THE OFFICIAL RECORD._**

Filed For Registration:   1/12/2011 12:26 PM
Instrument #:   D211010078
                D            7      PGS         $36.00

By: _Mary Louise Garcia_

D211010078

ANY PROVISION WHICH RESTRICTS THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY
BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

Prepared by: AKCHRISTIAN



IN BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

United States Bankruptcy Judge

Signed January 12, 2011

---

**Office of the Standing Chapter 13 Trustee**
125 E. John Carpenter Frwy, #1100
Irving, Texas 75062
(214) 855-9200/(214) 965-0754

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In Re:

AMIR JOHN AFLATOUNI
Debtor(s)

Case:        10-38538-SGJ-13

Notice Date: 01/10/2011

**Order Dismissing Chapter 13 Case Pursuant to General Order 2009-03**

On representation of the Standing Chapter 13 Trustee evidenced by the signature below
that the Debtor(s) failed to file the following paperwork and did not file a Motion to
Extend time for filing same or the time period designated in a Motion to Extend has
expired:

Statement of Financial Affairs
Schedules (A-J)
Plan and Motion for Valuation
Plan and Motion for Valuation was not served on all scheduled creditors.
Authorization for Pre-Confirmation Disbursement
Copies of all payment advices or other evidence of payment recieved within 60 days of
filing (AMIR JOHN AFLATOUNI)
A statement of the amount of monthly net income. itemized to show how the amount is
calculated.

and that 7 days written notice of such failure was given to Debtor(s) and the Attorney
for Debtor(s), if any, on 12/23/2010 prior to submission hereof;

IT IS THEREFORE, ORDERED, that the above proceeding be, and hereby is in all things
DISMISSED without prejudice PROVIDED that if, within fourteen (14) days of entry hereof, a
creditor in this case files a motion to amend this order and seeks a dismssal with
prejudice, sanctions or other relief deemed appropriate by the Court, this Order may be
amended by the Court, after a notice and a hearing, to grant the relief sought in said
motion in whole or in part.

EXHIBIT _F-6_

IT IS FURTHER ORDERED that all debts due and owing creditors as of this date are NOT DISCHARGED or affected in any manner by this Order.

### End of Order ###

Signed: /s/ Thomas D. Powers
        Chapter 13 Trustee

Form ntcdsm

## UNITED STATES BANKRUPTCY COURT

Northern District of Texas

Case No.: 10-38538-sgj13

Chapter: 13

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years. including married. maiden. trade. and address):
Amir John Aflatouni
aka Johnathan John Aflatouni. aka Foad
John Aflatouni. aka Brad John Aflatouni
P.O. Box 967
Colleyville, TX 76034

Social Security / Individual Taxpayer ID No.:
xxx-xx-5757

Employer Tax ID / Other nos.:

## NOTICE OF DISMISSAL

You are hereby notified that an Order Dismissing the above case was entered on 1/14/11.

Dated: 1/14/11

> Tawana C. Marshall
> Clerk, U.S. Bankruptcy Court
>
> BY: B Zisk
> Deputy Clerk

March 14, 2017

Youval Ziv

President

Grapevine Diamond, LP

C/O

PACIFIC HOLDINGS | LOS ANGELES

6300 Wilshire Blvd #970

Los Angeles, CA 90048

**CERTIFIED LETTER NO. 70153430000061272995**

**RETURN RECEIPT REQUESTED**

**REQUEST FOR PAYMENT**

This letter is my request for payment of the replacement note dated July 13, 1013 in the amount of $2,741,760.51 by Grapevine Diamond, LP.

Yours truly,

John Aflatouni

P. O. Box 967 Colleyville, Texas 76034

Cc: Regular Mail



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-14-00260-CV

**GRAPEVINE DIAMOND, L.P., JONATHAN AFLATOUNI,
and YOUVAL ZIVE, Appellants
V.
CITY BANK, Appellee**

On Appeal from the 429th Judicial District Court
Collin County, Texas
Trial Court Cause No. 429-01876-2010

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Whitehill
Opinion by Justice Whitehill

On the Court's own motion, we withdraw our opinion dated November 10, 2015 and vacate the judgment of that date. This is now the Court's opinion.

In this post-foreclosure deficiency suit, a second lienholder and guarantor challenge a foreclosure sale by the first lien holder. The main areas of controversy include whether (1) the first lien holder conclusively established its right to enforce the underlying notes and guaranties despite an alleged name discrepancy between the loan documents and pleadings, (2) alleged irregularities in the foreclosure sale defeated the first lien holder's summary judgment motion, and (3) the sale is void because it violated the automatic stay in the second lienholder's bankruptcy case.

More specifically, appellee City Bank loaned appellant Grapevine Diamond L.P. money to purchase real property in Grapevine, Texas from appellant Jonathan Aflatouni. Appellant Youval Zive guaranteed the debt, and Aflatouni retained a second lien.

After Grapevine Diamond defaulted, City Bank foreclosed and sued Zive on his guaranty for the deficiency. Subsequent third-party defendants Grapevine Diamond and Aflatouni asserted cross-claims against City Bank for wrongful foreclosure. The parties filed cross-motions for summary judgment. The trial court ultimately denied appellants' motions, granted City Bank's motions, and rendered judgment for City Bank.

Appellants present twenty-two issues that challenge:

(1) City Bank's capacity to sue (Grapevine Diamond/Aflatouni[1] Issues 1, 8, 11, 12, 13; Zive Issue 2);

(2) the adequacy of City Bank's summary judgment motion and pleadings (Grapevine Diamond/Aflatouni Issues 9 and 10);

(3) the foreclosure sale, alleging violation of a bankruptcy stay and other irregularities (Grapevine Diamond/Aflatouni Issues 2, 3, 4, 5, 6; Zive Issues 1.d, 1.e, 3.c);

(4) the guarantor's liability, alleging release and novation (Zive Issues 3.a, 3.b);

(5) the exclusion of expert and fact witness testimony on the property's value (Grapevine Diamond/Aflatouni Issues 14, 15, 16, 17; Zive Issues 1.a, 1.b, 1.c); and

(6) failure to award their damages and attorney's fees (Grapevine Diamond/Aflatouni Issues 7, 18, 19).

For the reasons discussed below, we resolve appellants' issues against them and affirm the judgment.

## I. BACKGROUND

On September 10, 2007, appellant Grapevine Diamond borrowed $6,375,000 from appellee City Bank, executing a promissory note and first lien deed of trust covering the property

---

[1] Grapevine Diamond and Aflatouni are represented by the same counsel on appeal and filed a joint brief.

mentioned below. Appellant Youval Zive guaranteed the indebtedness, executing a guaranty agreement on the same date. Using the loan proceeds, Grapevine Diamond purchased approximately ten acres of vacant land in Grapevine, Texas from Aflatouni and his wife.

Under a promissory note dated July 29, 2009, Grapevine Diamond borrowed an additional $150,000 from City Bank. The parties also signed loan modification agreements in 2008 and 2009. Zive signed the 2009 modification agreement as president of Grapevine Diamond's general partner and also as a guarantor.

Grapevine Diamond defaulted on both notes, and on April 5, 2010, it filed a bankruptcy petition that Zive signed on Grapevine Diamond's behalf under the penalty of perjury. On its related Schedule A (Debtor's Real Property), Grapevine Diamond listed the property at issue as an asset valued at $2,000,000.00 with a $7,000,000.00 corresponding "Amount of Secured Claim."

Correspondingly, Grapevine Diamond's Schedule D (Creditors Holding Secured Claims) listed City Bank as a creditor with a deed of trust. The related collateral is described as "raw land" worth $2,000,00.00. In the column titled "Amount of Claim Without Deducting Value of Collateral," Grapevine Diamond stated that it owed City Bank $7,000,000.00, with an "unsecured portion" of $5,000,000.00.

And Grapevine Diamond's Schedule F (Creditors Holding Unsecured Nonpriority Claims) listed Aflatouni as an unsecured creditor with a $3,500,000.00 claim.

On November 22, 2010, the bankruptcy court entered an "Order on City Bank's Motion for Relief from the Automatic Stay" in Grapevine Diamond's bankruptcy case. In that order, the court found that (1) the balance due to City Bank was $6,732,506.86, secured by a first lien deed of trust; (2) "the value of the collateral alone is insufficient to provide City Bank with adequate protection"; and (3) Grapevine Diamond "has no equity" in the collateral.

–3–

At a subsequent foreclosure sale, Aflatouni bid $3,000,000 for the property "on behalf of a client" but could not obtain cash for the purchase price. City Bank then purchased the property for $3,000,000.00.

Aflatouni filed bankruptcy petitions on December 6, 2010 (under Chapter 13 of the United States Bankruptcy Code) and January 31, 2011 (under Chapter 11). The Chapter 13 case was dismissed on January 14, 2011 because Aflatouni failed to file required documentation, including schedules. The Chapter 11 case was dismissed with prejudice on May 16, 2011. The bankruptcy automatic stay in Aflatouni's Chapter 13 case was in effect when the foreclosure sale occurred.

City Bank sued Zive and another guarantor, Nasser Shafipour, on their guaranties of Grapevine Diamond's indebtedness. Shafipour asserted third-party claims against Grapevine Diamond and Aflatouni, who in turn asserted cross-claims against City Bank for wrongful foreclosure, breach of contract, and several other causes of action regarding title to the property.[2] All parties sought summary judgment on their affirmative claims and defenses. The trial court denied appellants' motions and granted City Bank's. This appeal followed.

## II. ANALYSIS

### A. Standards of review.

We review a summary judgment de novo. *Mid-Century Ins. Co. of Texas v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2003). When both parties move for summary judgment and the trial court grants one motion and denies the other, we determine all questions presented and render the judgment the trial court should have rendered. *Id.*

We review a trial court's evidentiary rulings for abuse of discretion. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. Civ. App.—Dallas 2013, no pet.). We will not reverse a judgment on

---

[2] Shafipour was later dismissed from this suit and is not a party to this appeal.

-4-

an evidentiary ruling unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* (citing *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex. 1992)). When reviewing whether evidence was properly admitted or excluded, we must review the entire record. *Id.* (citing *State v. Central Expressway Sign Assocs.,* 302 S.W.3d 866, 870 (Tex. 2009)).

**B.     Was City Bank the payee on the notes and a party to the deeds of trust and guaranties?**

Appellants contend that City Bank did not own or hold the promissory notes and is not a party to the deeds of trust or the guaranties, and therefore was not authorized to foreclose on the property or enforce the guaranties. They instead argue that the counter-party to those documents is "City Bank, Texas," rather than "City Bank," the plaintiff and cross-defendant in this suit. Appellants also contend that City Bank never filed documents with the Texas Secretary of State to create an assumed name and may not now assert that it is the same entity as "City Bank, Texas." *See* TEX. BUS. & COM. CODE ANN. § 71.101 (West 2015) (entity must file certificate if it regularly conducts business in Texas under an assumed name).

Failure to file an assumed name certificate concerns the plaintiff's capacity to sue. *Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 55–56 (Tex. 2003). As such, the defendant must file a verified plea challenging the plaintiff's capacity. TEX. R. CIV. P. 93.1 (pleading that plaintiff lacks legal capacity to sue must be verified). The plaintiff must then prove that it is entitled to recover in the capacity in which it sued. *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II,* No. 02-11-00373-CV, 2014 WL 7473779, at *6 (Tex. App.—Fort Worth Dec. 31, 2014, no pet.).[3] City Bank met this burden.

---

[3] The appeal was later dismissed pursuant to settlement, but the court denied the motion to withdraw its opinion. *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II,* No. 02-11-00373, 2015 WL 1119894, at *1 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.).

–5–

Here, the record reflects that in 2009 appellants signed a loan modification agreement affirming their obligations to "City Bank, a Texas banking association (Lender)" under the notes, deeds of trust, and guaranties. This loan modification agreement identifies Grapevine Diamond as "Borrower" and Zive as one of the "Guarantors." The loan modification agreement also describes the promissory notes, deeds of trust, and guaranties by date, amount, deed record reference, and property description. Appellants likewise confirmed the outstanding note balances. The agreement further provides, "Borrower and Guarantors hereby confirm and agree such sums are due and owing to Lender without defense, counterclaim, or offset according to the modified payment schedule, interest rate and other terms set forth herein." This loan modification agreement was in City Bank's summary judgment evidence as Exhibit A-4 to the Affidavit of Morris Wilcox.[4] Appellants did not contest this agreement, which recites that "City Bank" is the lender and mortgagee.

In addition, the summary judgment evidence included the bankruptcy court's November 22, 2010 order granting the motion of "City Bank" to lift the automatic stay as to the collateral under the notes and deed of trust, and authorizing "City Bank" to "exercise any and all remedies afforded it pursuant to the terms of its loan documentation." And City Bank's summary judgment filings also included affidavit testimony that City Bank was the owner and holder of the notes and a party to the guaranties. The trial court could rely on all of this this evidence in

---

[4] Relying on *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984), appellants challenge Wilcox's affidavit as hearsay and violating the best evidence rule. Their argument rests on the premise that the affidavit testimony (stating that "City Bank" is the lender) conflicts with the note itself (stating that "City Bank, Texas" is the lender). Unlike in *Mercer*, Wilcox's affidavit is not "limited to a legal conclusion . . . and an alleged copy of a note." *Id.* The court in *Mercer* distinguished cases where, as here, the sworn copies of the notes "were, indeed, copies of originals complete with signatures." *See id.* Especially in light of the additional summary judgment evidence that appellants confirmed their indebtedness to "City Bank" in the loan modification documents, we reject appellants' hearsay and best evidence arguments.

Appellants also challenge Wilcox's testimony of the property's post-foreclosure sales price, again citing *Mercer*. Even if considering this testimony was error, it did not cause the rendition of an improper judgment because the post-foreclosure price of the property was not relevant to any issue presented in City Bank's summary judgment motion. *See* TEX. R. APP. P. 44.1(a) (no judgment may be reversed on appeal for error of law unless court of appeals concludes error probably caused rendition of improper judgment).

–6–

rejecting appellants' argument that City Bank was not the proper party to enforce appellants' obligations under the loan documents.

Moreover, appellants provided no evidence raising a fact issue regarding whether City Bank was doing business under an assumed name. *See Sibley*, 111 S.W.3d at 52 (whether partnership did business under assumed name was fact question for trial court). The only support appellants cite for their argument is that some of the operative documents in this case recite the lender's name as "City Bank, Texas." There was, however, no evidence that City Bank "regularly conducts business or renders professional services in this state under an assumed name," and was therefore required to file an assumed name certificate. *See* TEX. BUS. & COM. CODE ANN. § 71.101(1).

Further, Zive's own summary judgment response negates appellants' argument that City Bank sued under an assumed name and was therefore required by business and commerce code § 71.101 to file an assumed name certificate. For example, Zive's response includes a request for judicial notice of a reference from the Texas Secretary of State's website "showing that City Bank, a Texas state bank, has not filed the documentation with the Texas Secretary of State's office to create an assumed name." The record thus establishes that City Bank did not sue under an assumed name.

For the above reasons, the summary judgment evidence conclusively established that City Bank was entitled to enforce the notes and guaranties. We thus overrule Grapevine Diamond and Aflatouni's first, eighth, eleventh, twelfth, and thirteenth issues, and Zive's second issue.

## C. Was the Bank's no-evidence summary judgment motion sufficient to challenge appellants' trespass to try title, breach of contract, and suit to quiet title claims?

Appellants complain that City Bank's summary judgment motion was insufficient to challenge their trespass to try title, breach of contract, and suit to quiet or remove cloud on title

claims because City Bank attacked only one element of these causes of action and not all of their elements. We disagree.

City Bank was not required to allege that there was no evidence on every element of appellants' causes of action to prevail on its no-evidence summary judgment motion. Defeating one element of each claim suffices. Rule 166a(i) itself provides that a movant may seek summary judgment "on the ground that there is no evidence of *one* or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i) (emphasis added). "The motion must state the elements as to which there is no evidence." *Id.*

And, as we explained in *Nelson v. Regions Mortgage, Inc.*, the rule allows the movant to identify "whatever elements he believes are unsupported by evidence; it imposes no restrictions on the number of challenges that may be made." 170 S.W.3d 858, 861 (Tex. App.—Dallas 2005, no pet.); *see also Timpte Indus. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (motion specifying two elements of products liability claim was sufficient).

Here, City Bank's motion listed all of the elements for each cause of action, and then identified one or more specific elements on which it argued that there was no evidence. Specifically,

    (1)    for appellants' trespass to try title claim, City Bank challenged the element of superior title from a common source, *see Wilhoite v. Sims*, 401 S.W.3d 752, 760 (Tex. App.—Dallas 2013, no pet.) (listing "superior title out of a common source" as one of four elements of trespass to try title claim);

    (2)    for appellants' breach of contract claim, City Bank challenged the elements of an existing enforceable contract (as to Aflatouni) and breach (as to Grapevine Diamond), *see Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008,

–8–

no pet.) (successful breach of contract claim requires proof of four elements including valid contract and breach); and

(3) for appellants' claim to quiet or remove cloud on title, City Bank challenged the element that its claim on the property is invalid or unenforceable, *see Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App.—Amarillo 2013, pet. denied) (to state claim to quiet title, plaintiff must establish that challenged claim to property is invalid or unenforceable).

City Bank's summary judgment motion was thus sufficient to support the trial court's judgment on appellants' claims for trespass to try title, breach of contract, and to quiet or remove a cloud on title. Accordingly, we overrule Grapevine Diamond and Aflatouni's ninth issue.

**D.     Did the trial court err by overruling appellants' objection to City Bank's pleadings because City Bank did not plead the affirmative defenses of proportionate responsibility, failure to mitigate, and offset?**

Appellants contend that City Bank may not assert any new affirmative defenses "in the event there is a remand." They argue that the trial court erroneously overruled their objections to City Bank's failure to plead the proportionate responsibility, failure to mitigate, and offset defenses. But City Bank did not seek summary judgment on these defenses; the trial court's judgment does not include any ruling on them; and no remand is required. Appellants' issue does not present any error for our review. *See* TEX. R. APP. P. 44.1(a) (for reversal on appeal, court of appeals must conclude error probably caused rendition of improper judgment). We thus overrule Grapevine Diamond and Aflatouni's tenth issue.

**E.     Did an alleged violation of the automatic stay in Aflatouni's bankruptcy case require a different result?**

Aflatouni and Grapevine Diamond both urge that City Bank's foreclosure sale violated the automatic stay in Aflatouni's Chapter 13 bankruptcy case. They rely on the settlement statement executed by Grapevine Diamond reflecting the amount of $2,741,760.51 identified as

–9–

"Seller's Purchase into Grapevine Diamond" to support their argument that Aflatouni retained a vendor's lien when he sold the property to Grapevine Diamond. (Grapevine Diamond, however, listed Aflatouni as only an unsecured creditor.) They also argue that City Bank does not dispute that Aflatouni loaned $2.7 million to Grapevine Diamond when he sold the property in 2007. But they admit that his vendor's lien was subordinate to City Bank's first lien.[5]

Grapevine Diamond further contends that it has standing to challenge City Bank's alleged violation of the stay in Aflatouni's bankruptcy because it was an Aflatouni creditor based on promises Aflatouni made in the 2009 loan modification.

Next, Aflatouni and Grapevine Diamond rely on *In re Three Strokes Limited Partnership, Debtor*, 397 B.R. 804, 807 (Bankr. N.D. Tex. 2008) to support their automatic stay violation argument. In that case, the court held that the debtor's second lien interest in property was "a property interest that triggers the protection of the automatic stay," even though the underlying property was not property of the debtor's estate, because foreclosure proceedings "could have the effect of extinguishing the Debtor's second lien interest." *Id.* The court thus concluded that, based on the facts in that case, the debtor held "a cognizable property interest . . . that the automatic stay protects." *Id.* at 808. Based on this language from *Three Strokes*, Aflatouni and Grapevine Diamond posit that Aflatouni's alleged second lien was a property interest protected by the automatic stay in his bankruptcy case.

The *Three Strokes* court, however, focused on a significant nuance in that fact pattern not present here—whether an intercreditor subordination agreement created a waiver or relinquishment of the debtor's property rights such that the debtor had "no meaningful property interests left." *Id.* at 808-809. The court further stated that:

---

[5] Grapevine Diamond contends that it has standing to challenge City Bank's alleged violation of the stay in Aflatouni's bankruptcy because it was an Aflatouni creditor based on promises Aflatouni made in the 2009 loan modification.

> [T]his does not mean that the [d]ebtor has no property right here at all worthy of protection. The subordination agreement certainly dilutes or weakens the [d]ebtor's bundle of rights associated with the second lien. But it does not extinguish the property rights altogether.

*Id.* at 809. Thus, in *Three Strokes*, there was at least a possibility of value in the property.

The summary judgment record in the present case, however, establishes that there was no such possibility here. That is so because it was judicially established in the bankruptcy court that there was no equity in the property. Accordingly, there was nothing for Aflatouni's alleged lien to attach to at the time of the sale. Or, in the words of *Three Strokes*, the record conclusively establishes that there was "no meaningful property interest left" for Aflatouni, who thus had "no property right here worthy of protection."

Specifically, when Aflatouni filed his December 6, 2010 Chapter 13 petition, the bankruptcy court had already ruled, in Grapevine Diamond's bankruptcy proceeding, that there was insufficient value in the collateral "to provide City Bank with adequate protection" on its first lien. The bankruptcy court also found that Grapevine Diamond had no equity in the collateral.

These findings were consistent with the amounts stated on Grapevine Diamond's own bankruptcy schedules for the value of its interest in the property, the amount of City Bank's secured claim, and Aflatouni's unsecured creditor listing. Furthermore, the bankruptcy court's order specifically permitted City Bank to "exercise any and all remedies" permitted under its loan documents, including foreclosure sale.

Notwithstanding the above, as a Grapevine Diamond creditor, Aflatouni could have challenged both City Bank's motion to lift the stay and the bankruptcy court's order lifting the stay. Grapevine Diamond itself could have appealed the order. *See Mitchell v. Fort Davis State Bank*, 243 S.W.3d 117, 124 (Tex. App.—El Paso 2007, no pet.) (bankruptcy court's order

–11–

granting relief from automatic stay is final and appealable order) (citing *In re Chunn*, 106 F.3d 1239, 1242 (5th Cir. 1997)). Yet neither Aflatouni nor Grapevine Diamond took any such actions.

Moreover, as discussed below, appellants still had no summary judgment evidence that the property's value exceeded the amount stated on Grapevine Diamond's bankruptcy schedules, and the property was sold for less than the amount of City Bank's secured claim.

Accordingly, based on the specific facts before us, we overrule the portions of Grapevine Diamond and Aflatouni's second, fourth, fifth, and sixth issues alleging that summary judgment for City Bank was improper because the foreclosure sale allegedly violated the stay in Aflatouni's bankruptcy.

## F. Was the foreclosure sale invalid because of irregularities?

Appellants argue that there were two irregularities in the foreclosure sale itself that injured them by reducing the price: (1) the bidding was interrupted three times when Jim Goldston, who represented City Bank at the sale, received telephone calls, and (2) the sale was not readvertised after Aflatouni was unable to obtain cash for his winning bid and the sale was resumed later that afternoon. We reject appellants' arguments because there is no evidence that either alleged irregularity injured any appellant.

According to Goldston and Aflatouni, who both testified about the sale in their summary judgment affidavits, Aflatouni was the apparent highest bidder for the property at $3,000,000 or $3,001,000,[6] and the substitute trustee accepted Aflatouni's bid. The sale was then temporarily suspended to allow Aflatouni to obtain cash or a cashier's check in his bid amount, as the foreclosure sale notice required.

---

[6] Goldston testified the bid was $3,001,000; Aflatouni testified it was $3,000,000.

–12–

Both witnesses also said there were other potential bidders at the sale that morning. According to Goldston, however, no other potential bidders made an offer. Although Aflatouni said that five or six people appeared to be "very interested in the sale," he did not say that any of them made an offer.

Aflatouni further said that, because of the interruptions in the sale by Goldston's telephone calls, "I felt the substitute trustee and Mr. Goldston were not trying to maximize the sales price because the interruptions discouraged bidding." He further said that no other bidders were present when the substitute trustee (consistent with the sale notice) told him that he must pay by cashier's check by 2:00, and no other bidders were present at the reconvened sale. When Aflatouni could not perform at the reconvened sale later that afternoon, City Bank credit-bid $3,000,000 and purchased the property without readvertising the sale.

Appellants cite *American Savings & Loan Ass'n of Houston v. Musick* for the applicable rule: "[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." 531 S.W.2d 581, 587 (Tex. 1975) (citing *Sparkman v. McWhirter*, 263 S.W.2d 832, 837 (Tex. Civ. App.—Dallas 1953, writ ref'd)). "Mere inadequacy of consideration is not grounds for setting aside a trustee's sale if the sale was legally and fairly made." *Id.* And as we have explained, "[e]vidence showing that a better price would have resulted if the sale was conducted in a different manner is required." *Hunt v. Jefferson Sav. & Loan Ass'n*, 756 S.W.2d 762, 764 (Tex. App.—Dallas 1988, writ denied).

We reject appellants' arguments for several reasons:

One, as a matter of law Zive cannot prevail on a claim for wrongful foreclosure. As we discuss below, Zive waived any right to offset in the agreements he signed guaranteeing the indebtedness and may not recover damages even had he established irregularities in the sale. *See*

–13–

*Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 8 (Tex. 2014) (right of offset is defense that can be waived).

Two, Grapevine Diamond and Aflatouni cannot prove any damage caused by any irregularities in the sale because there was no evidence that the sale's outcome would have been different but for either type of alleged irregularity. Nor was there summary judgment evidence establishing that the property's fair market value on the date of the foreclosure sale was higher than City Bank's $3,000,000 bid. Although appellants cite to the appraisals City Bank accepted at the time of the loan and modification and appraisals anticipating future development on the property, there was no evidence that these appraisals reflected the fair market value on the foreclosure sale date. And, as we discuss below, the trial court properly excluded appellants' other proffered opinions on value. Nor was there evidence that any other person would have paid any more for that property that day.

Three, we reject Grapevine Diamond's and Aflatouni's argument that, without any evidence of an adverse effect on the sale's outcome, a sale is per se invalid if it is reconvened later in the day without readvertising the sale or notifying the potential bidders who were present earlier in the day. They rely on *Mitchell v. Texas Commerce Bank—Irving*, 680 S.W.2d 681, 683 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.), and *Clearman v. Graham*, 4 S.W.2d 581, 582– 83 (Tex. Civ. App.—Austin 1928, writ dism'd), to support this argument. To the extent either case purports to hold that such conduct alone warrants invalidating the sale, that rule would be inconsistent with supreme court precedents in *Musick* and *Sparkman*. *See Musick*, 531 S.W.2d at 587; *Sparkman*, 263 S.W.2d at 837 (both holding that irregularity must have caused or contributed to cause property to be sold for grossly inadequate price). Moreover, the part of *Mitchell* on which Grapevine Diamond and Aflatouni rely is dicta because the court had already completely disposed of the case based on that bank's failure to give proper notice. *See Mitchell*,

–14–

680 S.W.2d at 683. Similarly, *Clearman* was narrowly decided based on a jury finding that the creditor engaged in fraudulent conduct that kept the debtor from personally attending the sale with cash in hand, and evidence that the sale was reconvened without the presence of the person who had been declared the successful bidder earlier in the day. *See Clearman*, 4 S.W.2d at 582. Neither scenario exists here, and there is no evidence that the alleged irregularities "caused or contributed to cause" a lower sales price, let alone a grossly inadequate one. *See Musick*, 531 S.W.2d at 587.

For the above reasons, we conclude that appellants did not offer summary judgment proof that any irregularities in the foreclosure sale injured them. *See Hunt*, 756 S.W.2d at 764. We thus overrule Grapevine Diamond and Aflatouni's third, fourth, fifth, and sixth issues and Zive's issues 1.d and 3.c.

### G. Did the 2009 loan modification release Zive from his guaranty liability?

Zive argues that the 2009 loan modification agreement and a new guaranty he signed in 2009[7] release him from liability under his 2007 guaranty. We disagree because Zive (1) agreed in 2007 to guarantee "all renewals and extensions" of the debt; (2) agreed to the loan modification and ratified his guaranty obligations in 2009; and (3) failed to establish that his 2009 guaranty in any way altered his obligations under his 2007 guaranty or the 2009 loan modification agreement.

Zive's 2007 guaranty specifically included "all obligations, indebtedness and liabilities of Borrower owed to Lender, now existing or hereafter created . . . together with any and all renewals and extensions of such indebtedness . . . ." And in the 2009 loan modification agreement, Zive "join[ed] in the execution of the foregoing Loan Modification Agreement to

---

[7] In his own summary judgment motion and in his response to City Bank's motion, Zive relies on a guaranty agreement dated March 10, 2009, that was not included in City Bank's summary judgment evidence. In his summary judgment response, Zive contended the 2009 guaranty replaced the 2007 guaranty, rendering the 2007 guaranty "ineffective."

ratify and reaffirm [his] obligations under the Guaranty Agreement[ ] previously executed by Guarantor[ ] in favor of Lender, and to ratify and reaffirm the liens of the Deed of Trust and other Loan Documents to secure the Notes as modified hereby."

Zive contends that "the 2007 documents no longer support any claims of the Bank" because "there were material changes to the overall lending arrangement" under the 2009 loan modification. He cites *Futerfas Family Partners v. Griffin* for the premise that a guarantor is discharged by a material alteration of the underlying contract that lacks the guarantor's consent and harms the guarantor. 374 S.W.3d 473, 478 (Tex. App.—Dallas 2012, no pet.). As we explained in *Futerfas*, however, to receive a discharge, the guarantor must prove, among other elements, that a material alteration to the underlying contract was made without his consent. *Id.* The summary judgment evidence here, however, established that Zive fully consented to the 2009 modification.

Specifically, the 2009 loan modification agreement Zive signed contains his consent to the 2009 loan modification agreement:

> Notwithstanding anything else herein or elsewhere, the Guaranty Agreement[ ] of Youval Zive ... [is] hereby ratified and confirmed by Youval Zive ... and such Guaranty Agreement[ ] continue[s] in full force and effect. . . .
>
> JOINDER OF GUARANTORS
> The Guarantors join in the execution of the foregoing Loan Modification Agreement to ratify and reaffirm their obligations under the Guaranty Agreements previously executed by Guarantors in favor of Lender, and to ratify and reaffirm the liens of the Deed of Trust and other Loan Documents to secure the Notes as modified hereby. Guarantors each hereby affirm, confirm, ratify, renew and extend the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges created or arising by virtue of each of their respective Guaranty Agreements, until all of the indebtedness has been paid and performed in full.
>
> Guarantor hereby covenants with Bank as follows:
>
> (a) The Loan Documents, including but not limited to those certain Guaranty Agreements dated as of September 10, 2007 and September 10,

–16–

2008, as modified hereby, are in full force and effect and there are no defenses, counterclaims, or offsets to the payment and performance of an[y] of its/their obligations in regard to the Loan, or any of the Loan Documents, as modified hereby . . . .

Additionally, the terms of Zive's guaranties control his obligations. *See Chambers v. NCNB Tex. Nat'l Bank*, 841 S.W.2d 132, 134 (Tex. App.—Houston [14th Dist.] 1992, no writ). Zive expressly ratified and reaffirmed his obligations as guarantor by joining in the loan modification agreement, agreeing that his guaranty was in full force and effect without defenses, counterclaims, or offsets, and confirming and renewing his guaranty until the debt was paid in full. We thus conclude that Zive did not present any summary judgment evidence that raised a fact issue regarding whether any material alteration was made in his guaranty obligation without his consent. *See Futerfas*, 374 S.W.3d at 478; *see also Chambers*, 841 S.W.2d at 134 (where guaranty applied to all renewals and extensions of initial loan, and expressly provided that change in debtor's status did not alter guarantor's liability, guarantor remained liable on renewal note made after debtor, originally a partnership, was incorporated).

Furthermore, even the 2009 guaranty on which Zive relies bears the same effective date as the loan modification agreement and references the same promissory note and deed of trust. Instruments concerning the same transaction may be read together even if they are executed at different times and do not reference each other. *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (mandamus granted). Accordingly, under the express terms of his guaranties and the loan modification agreement, Zive remained liable for Grapevine Diamond's debts to City Bank.

In addition to his general argument that his obligations were discharged by the 2009 loan modification, Zive also contends that he has not waived the right of offset under § 51.003 of the Texas Property Code, *see* TEX. PROP. CODE ANN. § 51.003(c) (West 2014), despite the express waiver of this right in his 2007 guaranty agreement:

–17–

Furthermore, in the event any property securing the Guaranteed Indebtedness is foreclosed upon in any manner, and a deficiency is created as a result of the purchase price at such foreclosure sale, Guarantor does hereby irrevocably waive all rights to claim any offset against the deficiency as provided in Section 51.003, 51.004 and 51.005 of the Texas Property Code, as amended.

The 2009 loan modification agreement Zive signed did not expressly reference § 51.003, but it did contain the above-quoted joinder provisions in which he agreed that "there are no defenses, counterclaims, or offsets to the payment and performance of an[y] of its/their obligations in regard to the Loan, or any of the Loan Documents, as modified hereby . . . ." These provisions were sufficient to waive Zive's right of offset under § 51.003 as well as any other defenses to his liability on the guaranty. *See Moayedi*, 438 S.W.3d at 6.

Specifically, in *Moayedi* the supreme court held that the § 51.003 right of offset is a defense that can be waived. *Id.* at 8; *see also Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 265 (Tex. App.—Dallas 2014, pet. denied) (discussing *Moayedi*). The *Moayedi* court concluded that a "general waiver of defenses," including words such as "any," "each," and "every," was sufficient to waive "all possible defenses." *Moayedi*, 438 S.W.3d at 8; *Holmes*, 449 S.W.3d at 265. Here, Zive agreed to "continue in full force and effect" his express waiver in the 2007 guaranty, and also agreed that "there are no defenses, counterclaims, or offsets to the payment and performance" of his obligations under his guaranty.

For the above reasons, we conclude that Zive did not establish that he was entitled to discharge of his obligations under his guaranty and that summary judgment for City Bank was proper. We thus overrule Zive's issues 3.a and 3.b.

**H.    Did the trial court abuse its discretion by excluding appellants' property value evidence?**

**1.    Blaine and Jordan**

Through their own affidavits and the appraisals of two experts, appellants sought to offer summary judgment evidence that the property's value exceeded $8,000,000. Specifically, they designated Robert Blaine and George Jordan as expert witnesses on May 10, 2013, the deadline for doing so given in the trial court's scheduling order. Each witness was designated to "provide expert opinions regarding the appraised values of the real property at issue in this case." Blaine was designated to opine on the property's value "at the time of the foreclosure sale and also as a completed project for each of the development phases." Jordan was designated to opine on the property's value "prior to the time of the foreclosure sale." The designation states that a resume and licensing information is attached for each witness. The actual substance of Blaine's and Jordan's opinions, however, was not provided. Appellants argue that because the scheduling order did not require anything other than "a designation" of their experts, their designation exceeded the scheduling order's requirements.

But the record also reflects that appellants did not disclose Blaine and Jordan in response to two prior requests for disclosure made long before the scheduling order deadline. On September 22, 2011, City Bank requested disclosures from Aflatouni "of the information or material described in" Texas Rule of Civil Procedure 194.2(a)–(l). City Bank made the same request of Aflatouni and Grapevine Diamond on September 13, 2012. Aflatouni and Grapevine Diamond were thus required to disclose "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them" within thirty days after service of the request. Tex. R. Civ. P. 194.2(f)(3); 194.3. They were also required to supplement an incomplete response "reasonably promptly." Tex. R. Civ. P. 193.5; 195.6; *VingCard A.S. v. Merrimac Hosp. Sys., Inc.*, 59 S.W.3d 847, 856 (Tex. App.—Fort Worth 2001, pet. denied) (rules place affirmative obligation on responding party to disclose expert's mental

impressions and opinions and provide brief summary of basis). Appellants responded to City Bank's requests for disclosure on October 15, 2012, but did not disclose either Blaine or Jordan.

After appellants' May 2013 disclosure, City Bank again requested the information specified in rule 194 by letter on May 31, 2013. Blaine's mental impressions and opinions were finally supplied in an affidavit dated July 18, 2013. City Bank, however, had already prepared and filed its summary judgment motion two weeks earlier.

Because appellants did not timely disclose their experts in response to the disclosure requests, the trial court was required to exclude the evidence unless appellants established good cause for the failure to respond or the lack of unfair surprise or unfair prejudice to City Bank. TEX. R. CIV. P. 193.6; *VingCard*, 59 S.W.3d at 856. Appellants do not point to any showing of good cause or lack of unfair prejudice made in response to City Bank's motion to exclude Blaine's testimony for failure to timely disclose his mental impressions and opinions, or in response to City Bank's objections to Blaine's and Jordan's appraisals. Therefore, we conclude that the trial court did not abuse its discretion by excluding their opinions. TEX. R. CIV. P. 193.6.

Because we conclude that the trial court did not abuse its discretion by excluding Blaine's and Jordan's opinions for the above reasons, we need not and do not reach City Bank's argument that the trial court also properly excluded their opinions because neither witness opined regarding the property's value on the foreclosure sale date. *See generally* TEX. PROP. CODE ANN. § 51.003; *Plains Capital Bank v. Martin*, 459 S.W.3d 550, 555–58 (Tex. 2015) (discussing determination of fair market value for purposes of statutory provision on deficiency judgments).

### 2. Aflatouni and Zive as potential experts

Although Blaine and Jordan were not designated until May 2013, Aflatouni and Zive were designated as experts in October, 2012. Zive was designated to testify "as to the activities of a real estate developer and the land development process." Similarly, Aflatouni was

designated to testify "as to the activities of a real estate developer, the activities of a real estate broker, the land development process and the importance and reasonableness of the subordinated lien held by Aflatouni on this project." Neither, however, was designated to testify regarding the property's value on the foreclosure date. Absent disclosure or timely supplementation of Aflatouni's and Zive's mental impressions and opinions, the trial court did not err by excluding their "expert" opinions regarding the property's value. TEX. R. CIV. P. 195.6 (amendment and supplementation of discovery regarding experts); TEX. R. CIV. P. 193.5 (duty to amend or supplement); TEX. R. CIV. P. 193.6 (exclusion of evidence not timely disclosed in response to discovery request).

### 3. Aflatouni and Zive as lay witnesses

Aflatouni and Zive also argue that as owners of the property they were qualified as lay witnesses to testify to the property's value. Citing *Dallas County v. Crestview Corners Car Wash*, 370 S.W.3d 25, 41 (Tex. App.—Dallas 2012, pet. denied), Zive also asserts that as president of Grapevine Diamond's general partner, he is presumed to have knowledge of the property's fair market value.

When a business entity owns property, a natural person may testify as to the property's value under the property owner rule only if the person is an officer in a management position with duties in part relating to the property or an employee in a substantially equivalent position. *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 849 (Tex. 2011). *Reid Road*, however, further instructs that we should look at the substance of the witness's duties rather than his title or status. *Id.* at 849.

Moreover, while the "Property Owner Rule establishes that an owner is *qualified* to testify to property value," that testimony must meet the "same requirements as any other opinion evidence." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012) (quoting

–21–

*Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)) (emphasis original). The *Justiss* court continued,

> Because property owner testimony is the functional equivalent of expert testimony, it must be judged by the same standards. Thus, as with expert testimony, property valuations may not be based solely on a property owner's *ipse dixit*. An owner may not simply echo the phrase "market value" and state a number to substantiate his diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough.

*Id.* at 159. Thus, being qualified to testify about value does not equate to providing competent evidence of value.

As discussed below, assuming Zive and Aflatouni were qualified based on their status to testify about the property's value on the foreclosure date, their affidavit testimony on that issue was still legally insufficient evidence of the property's value on the foreclosure date.

Turning first to Zive, he argues that he was qualified to opine about the property's value because he was the president of Grapevine Diamond's general partner and that he had worked on the project. Assuming without deciding that he was qualified to testify on that issue, his testimony was not admissible evidence of fair market value. Specifically, Zive testified that (1) Grapevine Diamond purchased the property in 2007 for approximately $6.5 million; (2) he reviewed Jordan's 2009 appraisal report; (3) in his opinion, the fair market value of the property "would have increased in the time-period from the date of purchase to the date of the foreclosure sale"; and (4) his "conservative estimate" is that at the time of the foreclosure sale the fair market value of the property was $8,300,000.

Zive's opinion, however, was not supported with an underlying basis. Although he relied on Jordan's 2009 appraisal report, Zive provided no substantiation for his opinion that the fair

–22–

market value of the property would have increased by approximately $2 million by the 2011 foreclosure sale date. Instead, his "conservative estimate" simply offers a conclusion that is unsupported by any specific, underlying data.

Likewise, even if Aflatouni, as a Grapevine Diamond limited partner, was qualified to testify as an owner of the property (an issue we do not decide), he offered only unsupported conclusions of fair market value. His summary judgment affidavit states that he became a Grapevine Diamond limited partner on August 4, 2009. He further said that as a limited partner and as the seller of the property to Grapevine Diamond, he is familiar with the property and its value.

Although Aflatouni said that he has managerial responsibilities related to the property that include development and marketing, he does not explain what the marketing and development duties might be. He also does not state that he ever performed these functions regarding the property, particularly in connection with forming his opinion concerning the fair market value of the property.

With regard to fair market value, Aflatouni states only that he reviewed appraisal reports for 2007 and 2009 to form his opinion about the fair market value of the property in 2011. There is, however, no data or other information to connect the early values to the 2011 value. He does not explain how or why the alleged value remained constant from 2007 through 2011, or what calculations, if any, he performed to reach his conclusion concerning the 2011 value. In short, his opinion concerning the 2011 fair market value of the property is nothing more than a bare conclusion.

After reviewing the entire record, we conclude that the trial court did not abuse its discretion by excluding the testimony of Blaine, Jordan, Aflatouni, and Zive as to the property's fair market value on the foreclosure sale date. *See Estate of Finney*, 424 S.W.3d at 612. We thus

–23–

overrule Grapevine Diamond and Aflatouni's fourteenth, fifteenth, sixteenth, and seventeenth issues, and Zive's issues 1.a, 1.b., and 1.c.

**I.     May Grapevine Diamond or Aflatouni recover damages or attorney's fees?**

Because summary judgment was proper dismissing all of Grapevine Diamond and Aflatouni's claims against City Bank, they may not recover damages, punitive damages, or attorney's fees. *See, e.g., Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (to recover damages for wrongful foreclosure, alleged irregularities in sale must be cause of injury to mortgagor). We thus overrule Grapevine Diamond and Aflatouni's seventh, eighteenth, and nineteenth issues.

### III. CONCLUSION

Having overruled appellants' issues, we affirm the trial court's judgment.

140260F.P05

/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GRAPEVINE DIAMOND, L.P., JONATHAN AFLATOUNI, and YOUVAL ZIVE, Appellants

No. 05-14-00260-CV     V.

CITY BANK, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-01876-2010.
Opinion delivered by Justice Whitehill; Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee City Bank recover its costs of this appeal from appellants Grapevine Diamond, L.P., Jonathan Aflatouni, and Youval Zive.

Judgment entered December 7, 2015.

–25–

| GRAPEVINE DIAMOND, L.P. and | § | IN THE DISTRICT COURT OF |
|---|---|---|
| AMIR FOAD JOHN AFLATOUNI, | § | |
| aka JONATHAN AFLATOUNI, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| ENCLAVE AT GRAPEVINE, L.P., | § | |
| A TEXAS LIMITED PARTNERSHIP, | § | |
| Defendant. | § | 342ND JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT ENCLAVE'S AMENDED AND RESTATED TRADITIONAL MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS

After considering Defendant Enclave at Grapevine, L.P.'s ("Enclave") Amended and Restated Motion to Dismiss or, Alternatively, Traditional Motion for Summary Judgment, Plaintiff Jonathan Aflatouni's ("Aflatouni") Motion for Summary Judgment, and Enclave's Objections to and Motion to Strike Aflatouni's Summary Judgment Evidence, the responses filed by Enclave and Aflatouni, timely filed summary judgment evidence, and arguments of counsel at the May 4, 2017 hearing, the Court finds that Enclave's Traditional Motion for Summary Judgment should be GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Enclave's Traditional Motion for Summary Judgment is GRANTED in its entirety against Plaintiffs Aflatouni and Grapevine Diamond, L.P., and Plaintiffs' causes of action for trespass to try title, slander of title, action to quiet and remove cloud on title, and the request for the filing of a corrective document in public real property records in Plaintiffs' above-referenced suit.

The Court DENIES Aflatouni's Motion for Summary Judgment and DENIES Enclave's Objections to and Motion to Strike Aflatouni's Summary Judgment Evidence.

The Court DENIES Enclave's request for attorneys' fees.

ON 5/30/17, ALL SERVED VIA:
___ HAND DELIVERY
X MAIL Sandberg + Hall
___ FAX
___ _____ WHO IS TO
SERVE COPIES ON ALL OTHERS

E-MAILED ᵛ
Sandberg, Hall

It is further ORDERED that this is an interlocutory order that does not resolve all claims between the parties, as summary judgment is not being granted regarding Aflatouni's claim based upon physical damage to Aflatouni's neighboring property.

**SO ORDERED.**

Signed on: _____Mny 26_____, 2017.

_____

JUDGE J. WADE BIRDWELL

CAUSE NO. 342-280952-15

| | | |
|---|---|---|
| GRAPEVINE DIAMOND, L.P. and | § | IN THE DISTRICT COURT OF |
| AMIR FOAD JOHN AFLATOUNI, | § | |
| aka JONATHAN AFLATOUNI, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| ENCLAVE AT GRAPEVINE, L.P., | § | |
| A TEXAS LIMITED PARTNERSHIP, | § | |
| Defendant. | § | 342ND JUDICIAL DISTRICT |

## FINAL JUDGMENT

After considering Plaintiff Amir Foad John Aflatouni aka Jonathan Aflatouni ("Aflatouni") and Defendant Enclave at Grapevine, L.P.'s ("Enclave") Joint Motion for Entry of Final Judgment, and the Court's May 26, 2017 Order Granting Defendant Enclave's Amended and Restated Motion for Summary Judgment Against Plaintiffs (the "Summary Judgment Order"), the Court finds that the Joint Motion for Entry of Final Judgment should be GRANTED.

The Court finds that its May 26, 2017 interlocutory Summary Judgment Order fully addressed and was dispositive regarding Plaintiffs Grapevine Diamond, L.P. and Aflatouni's causes of action for trespass to try title, slander of title, action to quiet and remove cloud on title, and the request for the filing of a corrective document in public real property records in Plaintiffs' above-referenced suit (collectively, the "Title Claims").

The Court finds that the Title Claims were the only claims brought by Grapevine Diamond, L.P., and that the Summary Judgment Order fully disposed of all claims relating to Grapevine Diamond, L.P.

The Court further finds that Aflatouni's claim for trespass based upon physical damage to Aflatouni's fence (the "Fence Claim"), and any claims for attorneys' fees and reasonable

1

C/M E
E-MAILED
Sandberg, Hall

921

expenses and costs associated with the Fence Claim, have been nonsuited and thus are dismissed with prejudice to re-filing the same.

The Court further finds that Enclave's claim for attorneys' fees and its reasonable expenses and costs incurred in the defense of this matter pursuant to the Fence Claim, as outlined in its prayer for relief, has been nonsuited and thus is dismissed with prejudice to re-filing the same.

The Court further finds that, based on the foregoing, all claims and issues have been finally resolved as to all parties in this case.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Summary Judgment Order that Aflatouni and Grapevine Diamond take nothing by the Title Claims is incorporated into this Final Judgment and that this Final Judgment be entered by the Clerk of this Court. This Final Judgment disposes of all issues and parties and is intended to be final and appealable.

It is further ORDERED this Final Judgment will result in the Summary Judgment Order regarding the Title Claims becoming a final judgment; that Aflatouni retains all of his existing rights to litigate and appeal the Title Claims as pled in the Litigation on which the Court previously granted summary judgment in favor of Enclave; that Enclave retains all defenses and rights associated with the Title Claims and any potential appeals of the Title Claims; that this Final Judgment does not affect or prejudice the rights of Aflatouni to litigate and appeal the Title Claims and of Enclave to respond to such litigation or appeals, or the right of either party to litigate the Title Claims upon any remand from any such appeals.

It is further ORDERED that each party shall bear its own costs.

**SO ORDERED.**

2

Signed on: _September 27_, 2017.

_[signature]_
JUDGE J. WADE BIRDWELL

**APPROVED AS TO FORM:**

/s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg
Palmer & Manuel, LLP
8350 North Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6454
Facsimile: (214) 265-1950
Email: jsandberg@pamlaw.com

**ATTORNEY FOR PLAINTIFF AMIR
FOAD JOHN AFLATOUNI aka
JONATHAN AFLATOUNI**

/s/ _Margaret "Peg" Donahue Hall_
Margaret "Peg" Donahue Hall
Texas Bar No. 05968450
peg.hall@dentons.com
Leanna M. Anderson
Texas Bar No. 24085833
leanna.anderson@dentons.com
Spencer D. Hamilton
Texas Bar No. 24087656
spencer.hamilton@dentons.com
DENTONS US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910

**ATTORNEYS FOR DEFENDANT
ENCLAVE AT GRAPEVINE, L.P.**

3

Document: Continental Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499  Actions ▾

Research

---

### ◆ Continental Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499

**Copy Citation**

Supreme Court of Texas

June 1, 1988, Decided

No. C-7383

**Reporter**

751 S.W.2d 499 * | 1988 Tex. LEXIS 65 ** | 31 Tex. Sup. J. 499

Continental Casing Corporation, Petitioner, v. Samedan Oil Corporation, Respondent

**Prior History:** [**1] FROM GAINES COUNTY, EIGHTH DISTRICT.

## Core Terms

summary judgment, notice, mail, pipe, days

---

## Case Summary

**Procedural Posture**
Petitioner subcontractor challenged a decision from the Court of Appeals of Texas, Eighth District, Gaines County, which reversed the trial court's grant of summary judgment in favor of petitioner and rendered judgment for respondent in a case involving the claim of a lien against mineral property.

**Overview**
Petitioner subcontractor brought an action to foreclose on its lien and moved for summary judgment against respondent buyer. Respondent answered and filed its own motion for summary judgment. The trial court granted petitioner's motion for summary judgment and denied respondent's motion. The court of appeals reversed the trial court's judgment and rendered judgment for respondent. The court of appeals erred in holding that a setoff in violation of the bankruptcy automatic stay was voidable. An action taken in violation of the automatic stay was void, not merely voidable. After careful review of the record, however, the court concluded that ambiguities and deficiencies in the summary judgment record precluded rendition for either party in a summary judgment proceeding. And as the nonmovant was entitled to have all reasonable inferences made and all doubts resolved in its favor, the court of appeals erred in granting summary judgment in respondent's favor. The court declined to address the substantial compliance doctrine. Thus, the court granted petitioner's application and reversed the court of appeal's judgment and remanded the case to the trial court for further proceedings.

**Outcome**
The court granted petitioner's application for review and reversed the court of appeals' judgment and remanded the cause to the trial court for further proceedings as the granting of summary judgment to either party was contrary to the court's holding that in a summary judgment proceeding, the nonmovant was entitled to have all reasonable inferences made and all doubts resolved in its favor.

---

▼ LexisNexis® Headnotes

---

Bankruptcy Law > Administrative Powers ▾ > Automatic Stay ▾ > General Overview ▾
Bankruptcy Law > ... > Administrative Powers ▾ > Automatic Stay ▾ > Judicial Review ▾
Bankruptcy Law > ... > Automatic Stay ▾ > Violations of Stay ▾ > Void & Voidable Actions ▾
Bankruptcy Law > ... > Bankruptcy ▾ > Claims ▾ > Setoffs ▾

**HN1**⬇ An action taken in violation of the bankruptcy automatic stay is void, not merely voidable. 🔍 More like this Headnote

*Shepardize* - Narrow by this Headnote (57)

Civil Procedure > Judgments ▾ > Summary Judgment ▾ > General Overview ▾
Civil Procedure > ... > Summary Judgment ▾ > Entitlement as Matter of Law ▾ > General Overview ▾
Civil Procedure > ... > Summary Judgment ▾ > Supporting Materials ▾ > General Overview ▾

## Appendix to Appellant's Brief - Page 67 of 69

Document: Continental Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499    Actions ▾

*Shepardize* - Narrow by this Headnote (78)

**Counsel:** Mr. Joe K. McGill ▾, Seminole, Texas, Mr. Dan Patchin, Calvin, Dylewski, Gibbs, Maddox, Houston, Texas, Mr. Daniel J. Kasprzak ▾, Calvin, Dylewski, Gibbs, Maddox, Houston, Texas, for Petitioner.

Ms. Elizabeth M. Marsh ▾, Lynch, Chappell, Allday & Alsup ▾, Midland, Texas, for Respondent.

**Opinion by:** PER CURIAM

## Opinion

 **[*500]** This is a summary judgment case involving the claim of a lien against mineral property under Texas Property Code sections 56.001 et seq. Samedan Oil Corporation ("Samedan") placed an order with Misco Supply Company ("Misco") for Misco to supply casing to one of its wells. Misco in turn subcontracted the job, placing an order with Continental Casing Corporation ("Continental") for it to deliver the pipe to the well. Continental delivered the pipe promptly and billed Misco.

Due to credits for returns, Misco owed Samedan thousands of dollars, which Misco had arranged for Samedan to take in "merchandise credit" against future invoices. Misco was in financial trouble and filed for Chapter 7 Bankruptcy the day before it sent the invoice for the pipe delivery to Samedan. Continental sent Samedan two letters demanding that [**2] Samedan pay for the pipe. The first letter was sent by first class mail on January 9, 1984, less than two months after delivery of the pipe. This first letter did state that if payment was not received Continental would "file necessary liens on your well," but did *not* expressly state that Continental claimed a lien on Samedan's mineral property. The second letter was mailed by certified mail only eleven days before Continental filed its lien affidavit on what would appear to have been the last day of the six month period for timely filing under Texas Property Code section 56.021(a). Samedan received and signed for this certified letter six days before the filing date. The second letter did expressly state that a lien was claimed "pursuant to Tex. Prop. Code § 56.021(b)." Under section 56.021(b), the mineral subcontractor must "serve on the property owner written notice that the lien is claimed" not later than ten days before the subcontractor files the lien affidavit.

Continental sued to foreclose its lien and moved for summary judgment. Samedan responded and filed its own motion for summary judgment. Samedan claimed the lien was invalid because it had offset the pipe invoice [**3] against what Misco owed it and thus owed no debt, or alternatively because "serve" in section 56.021(b) meant actually receiving the notice was required. **[*501]** Continental replied that the automatic stay of the bankruptcy made the alleged offset void, and that certified mailing was "service" by incorporation of the mechanics' and materialmen's lien statutes.

The trial court granted Continental's motion for summary judgment and denied Samedan's. The court of appeals in an unpublished opinion reversed the trial court judgment and rendered judgment for Samedan. The court of appeals wrote that "only the bankruptcy trustee had standing to challenge the post-petition transfer," and further sustained Samedan's claim that ten days' notice had not been given.

The court of appeals erred in holding that a setoff in violation of the bankruptcy automatic stay was voidable. *HN1* ⚓ An action taken in violation of the automatic stay is void, not merely voidable. *Kalb v. Feuerstein*, 308 U.S. 433, 84 L. Ed. 370, 60 S. Ct. 343 (1940); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984); 4 Collier on Bankruptcy para. 553.05[2] at 553-59 (15th ed. 1987). This was error. *Eichelberger* [**4] *v. Eichelberger*, 582 S.W.2d 395 (Tex. 1979). After careful review of the record, however, we have concluded this cause presents error precluding rendition for either party in a summary judgment proceeding. The affidavit of Samedan's landman in support of its motion for summary judgment (and in opposition to Continental's) is conclusory and does not expressly state when the alleged offset was taken -- before or after the filing of the bankruptcy petition. If it were validly taken before the bankruptcy petition was filed, it would be a preference that could only be declared invalid in the bankruptcy court. *Federal Deposit Insurance Corp. v. Davis*, 733 F.2d 1083 (4th Cir. 1984). Also, Samedan's affidavit is vague on the issue of notice. It recites that notice expressly claiming a lien was not received sooner than ten days before the filing date for the lien affidavit, but it does not deny Samedan's having received the January 9, 1984 letter. Continental's affidavit in support of its motion for summary judgment alleged the original January 9, 1984 letter is in Samedan's possession, but does not allege any date by which Samedan received it. *HN2* ⚓ In a summary judgment proceeding, the [**5] nonmovant is entitled to have all reasonable inferences made and all doubts resolved in its favor. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex. 1979). There are other ambiguities and deficiencies in the summary judgment record we need not expressly address. The granting of summary judgment to either party was contrary to our *Clear Creek* opinion.

As far as the sufficiency of the first notice letter and whether notice was effectively "served" when the second letter was mailed by certified mail, we note without approval or disapproval that several Texas intermediate appellate court decisions have applied the substantial compliance doctrines of the mechanics' and materialmen's lien laws to the mineral property lien statutes now codified in Texas Property Code sections 56.001 et seq. *See, e.g., Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833, 836-38 (Tex. Civ. App. -- Eastland 1980), *modified sub nom. Ayco Development Corp. v. G.E.T. Service Co.*, 616 S.W.2d 184 (Tex. 1981) (expressly noting the substantial compliance holding was not presented to the court); *Marathon Metallic Building Co. v. Texas National Bank of Waco* [**6] , 534 S.W.2d 743, 747 (Tex. Civ. App. -- Waco 1976, no writ); *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App. -- Eastland 1975, no writ). The facts are not sufficiently developed in this summary judgment record to determine whether such a doctrine could or should apply. We decline to address the substantial compliance doctrine in the present case, since ruling on the issue would not necessarily be dispositive of this case, given the ambiguous state of the record.

Because the court of appeals' decision conflicts with *Clear Creek*, we grant Continental's application, and without hearing oral argument, a majority of the court reverses the court of appeals' judgment and remands the cause to the trial court for further proceedings. Tex. R. App. P. 133(b).

OPINION DELIVERED: June 1, 1988.



**Appendix to Appellant's Brief - Page 68 of 69**

📁 ▾  ⬇ ▾ | Go to ▾                                    🔍 ▾                              •••

▸  **LexisNexis®**                                                            ⵁ**RELX** Group™

**Appendix to Appellant's Brief - Page 69 of 69**